UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER GALLO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA,<br><br>　　　　　Defendant. | Case No. 1:21-cv-03298 (TNM) |

## MEMORANDUM ORDER

Alexander Gallo owns and rents condos in the District of Columbia. His business took a hit during the pandemic when the District passed laws that curbed his right to evict tenants or sue for rent. So he sued, alleging that these laws violated his constitutional rights. The Court disagreed and dismissed Gallo's Complaint.

Now, Gallo asks the Court to reconsider that decision. He says the Court got some facts wrong and challenges the Court's Contract Clause and takings analyses. Some of Gallo's factual points are well taken; had he made them in his Complaint, the result *may* have been different. Thus, to prevent manifest injustice and afford Gallo solicitude as a pro se litigant, the Court will reopen this case and direct him to amend his Complaint within 30 days.

I.

Starting in 2020, the District passed a flurry of temporary COVID laws. One of these barred landlords from suing to evict tenants. *See* Coronavirus Omnibus Emergency Amendment Act of 2020, D.C. Act 23-317, § 10 (May 13, 2020). Another barred suits to collect debts. *See* COVID-19 Response Supplemental Emergency Amendment Act of 2020, D.C. Act 23-286, § 207 (Apr. 10, 2020). Plus, it launched STAY DC, a program that allowed landlords and tenants to apply together for rental assistance. *See* Press Release, Exec. Off. of the Mayor,

*Mayor Bowser Announces $350 Million Rent and Utility Assistance Program for DC Residents*, Gov't of the Dist. of Columbia (April 12, 2021), https://bit.ly/3gLibqH.  And it enacted the Coronavirus Support Temporary Amendment Act of 2021 (PPP).  D.C. Act 24-62, § 402 (May 3, 2021) (codified at D.C. Code § 42-3192.01).  The PPP required landlords to offer payment plans to certain tenants, and it protected those tenants from lawsuits if they abided by their plans' terms.  D.C. Code § 42-3192.01(g).

In 2021, the District began sunsetting these laws.  D.C. Act 24-125 (Jul. 24, 2021) (codified at D.C. Code § 42-3505.01 *et seq.*) ("Phasing Act").  Thus, landlords who had used the District's rental-assistance program could begin filing eviction lawsuits in October of that year. *Id.*

Because of these laws, Gallo could not evict a squatter from one of his condos.  Compl. ¶ 2, ECF No. 1-1.  So he sued the District, alleging that it had violated the Constitution's Contract Clause, Petition Clause, and Takings Clause, as well as his right of access to courts. *Id.* at 2.  The District then moved to dismiss.  *See* Def.'s Mot. to Dismiss, ECF No. 6.

The Court agreed with the District and dismissed Gallo's claims without prejudice. Order, ECF No. 19.  It found that Gallo lacked standing for his claim that the PPP violated the Contract Clause.  Mem. Op. at 6, ECF No. 18.  And the Court found that neither the Filing Moratorium nor the Debt Collection Moratorium violated Gallo's constitutional rights. *Id.* at 10, 15, 20, 22.  Now, Gallo asks the Court to reconsider.  *See* Mot. for Recon. (MFR), ECF No. 22.

## II.

On a motion for reconsideration under Rule 59(e), the movant must point to either "an "intervening change of controlling law," "new evidence," "a clear error," or the need to "prevent manifest injustice."  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018)

(cleaned up). These motions are disfavored and must be denied if they merely "raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* (cleaned up).

Gallo raises many points for reconsideration. Most get him nowhere. But a few factual points are compelling: Gallo explains that the squatter did not apply for assistance and then disappeared. And he also suggests that he never invited the squatter in the first place (although his first Complaint seems to undercut that).

Because of the solicitude courts afford pro se litigants and the need to prevent manifest injustice, the Court reopens this case. *See Moini v. LeBlanc,* 456 F. Supp. 3d 34, 40 (D.D.C. 2020) (declining to dismiss inartfully pled pro se complaint). Gallo shall thus have 30 days to file an Amended Complaint that addresses the factual deficiencies in his first.

### III.

These key fact issues rear their head in a few places.

### A.

Gallo claims that the Court erred in characterizing some of the District's programs as relief programs for landlords. *See, e.g.*, Mem. Op. at 3 (calling STAY DC a "program[] to assist property owners facing financial strain from unpaid rent"); *id.* at 6 ("The PPP is a remedy for the District's laws restricting evictions."). Instead, he protests, those programs were meant to assist tenants. MFR at 2, 4. Relatedly, Gallo says that the Court wrongly assumed that he "could 'apply' for relief and receive it." MFR at 1.

Start with STAY DC. Gallo quibbles with the Court's characterization that the program helped "certain tenants and housing providers." MFR at 2 (quoting Mem. Op. at 3). Gallo insists that this is not so because the program requires that both a landlord and his tenant apply.

3

Granted, that rule may mean that many landlords received no help. But it does not mean that the program helped no landlords. By assisting tenants who were otherwise unable to pay, the program helped landlords who might otherwise have received no money.

That said, the fact issues raised in Gallo's motion bear on whether relief was available to *him*. Gallo argues that relief was unavailable to him under STAY DC because "[i]f a tenant does not act there is no application." MFR at 2; *see also* Reply at 1, ECF No. 25. But Gallo never clearly said in his Complaint that the "squatter" in his house had refused to apply. So the Court could not assume that relief was unavailable to *him*.

To be sure, Gallo said that "[n]o compensation was or is provided or promised by the District." Compl. ¶ 4. And he also called the District's remedies for landlords non-existent. *See* Motion to Strike at 1, 3, ECF No. 10. But the Court need not take these conclusory allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Yet now, Gallo clarifies that "the occupant did not pay, did not 'apply' for assistance, [and] disappeared." MFR at 5. This may change things. And Gallo may plead these facts in his Amended Complaint.

**B.**

Those fact issues may alter the Court's takings analysis.

*1. Yee.* Start with Gallo's claim that the Court improperly relied on *Yee v. City of Escondido*, 503 U.S. 519 (1992). He argues that *Yee* does not control here because the law at issue there allowed eviction for nonpayment of rent. *See* MFR at 7. True, but that was not central to the Court's holding. Instead, *Yee* rested in large part on the voluntariness of the owner/renter relationship. As the Supreme Court noted, "Petitioners voluntarily rented their land to mobile home owners." 503 U.S. at 527. And it considered that relationship voluntary even

4

though there was at least one restriction on evictions. *Id.* at 528 ("[A] park owner who wishes to change the use of his land may evict his tenants, albeit with 6 or 12 months notice."). Had the District forced Gallo to allow the squatter access to his apartment in the first place, Gallo's argument would fare better. But on the face of Gallo's Complaint, it appeared that he initially "invited" the squatter onto his property.

Yet Gallo now says that the Court misread his Complaint when finding that he had "invited" the squatter. *See* MFR at 4. As Gallo notes, he plead that "a squatter has been residing at the *District's* invitation for nearly two years." Compl. ¶ 2 (emphasis added). So the Court was wrong to write that "Gallo invited the nonpaying tenant onto his property." Mem. Op. at 16.

The Court disagrees. Gallo ignores the rest of his Complaint. There, he adds that this squatter "was foreclosed nearly two years ago for not paying his bills." Compl. ¶ 2. Based on that, the Court read Gallo's allegation that the District "invited" the squatter as follows: by passing laws restricting evictions, the District had "invited" the squatter to stay. And that was a fair reading. The squatter was at one point "paying his bills" and thus presumably invited there by Gallo. If that is wrong, as Gallo now suggests, then he may clarify those facts in his Amended Complaint.

Gallo also argues that he invited "a *leasehold*- not an individual who can be extracted from his leasehold (eg, his *payment*) and still be considered 'invited.'" MFR at 7; *see also* Reply at 2–5 (arguing similar); Notice of Suppl. Auth., ECF No. 26 ("Court is not free to simply adopt language from other federal district courts and conjure tenancies."); Notice of Suppl. Auth., ECF No. 30 (discussing reversionary interests). In other words, he now asks "the Court to reassess its 'invitation' analysis under *Yee* as one potentially applicable to some leaseholds- not individuals." Reply at 3.

His novel argument goes like this: A tenant who stops paying rent is no longer a tenant. *Id.* And because the former tenant has no estate, that person "is no different than a member of the public." *Id.* So the Government "commits a physical taking when it *grants possession* to [that] person." *Id.* (emphasis in original).

The Court disagrees. That person *is* different "than a member of the public" because that person was invited. *Id.* at 3. That is why the Court found that *Yee* controls. Mem. Op. at 17 ("The District's laws do not force Gallo to give anyone access to his property that he did not invite. So he does not suffer the same infringement on his right to exclude as the growers in *Cedar Point*."). *Yee* never makes the distinction that Gallo presses and this Court will not either.

Gallo also says that the "8th Circuit [c]orrectly [d]istinguished *Yee*." Reply at 6. He claims that the Eighth Circuit "simply recognized that the government forced occupancy 'regardless of whether tenants provided compensation' and where leases were 'materially violated.'" *Id.* (quoting *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 733 (8th Cir. 2022)). In support, he again tries to distinguish *Yee*. His case is different, he urges, because it involves nonpayment of rent. Reply at 6. And to prove that, he quotes *Yee* out of context, noting that it "highlighted the unambiguous distinction between a . . . lessee and an interloper with a government license." *Id.* (quoting *Yee*, 503 U.S. at 532 (cleaned up)).

But the sentence before that notes that "it is the invitation, not the rent, that makes the difference." *Yee*, 503 U.S. at 532 (cleaned up). And because Gallo's Complaint suggests that he invited the squatter, the squatter appeared more like a lessee than an interloper. So this line of argument failed on factual grounds too.

*2. Regulatory takings.* In closing, Gallo briefly repeats that the District's programs were regulatory takings as well. MFR at 9–10. His chief complaint here is that the Court's

"regulatory takings analysis centers on an assumption that [he] was 'not without recourse.'" *Id.* at 9 (quoting Mem. Op. at 20). But as the Court explained earlier, that assumption was fair based on Gallo's Complaint and the District's laws.

If Gallo meant to raise an as applied challenge, then he needed to plead specific facts with more clarity. In *Yee*, the petitioners claimed that "the statutory procedure for changing the use of a mobile home park is in practice kind of a gauntlet," such that they were not actually "free to change the use of their land." 503 U.S. at 528 (cleaned up). But because they never "claim[ed] to have run that gauntlet," the Court examined the statute facially instead. *Id.* Similarly, Gallo never clearly claimed that he tried to use the District's programs. Rather, he just said that "[n]o compensation was or is provided by the District for the occupancy imposed." Compl. ¶ 4. Again, Gallo's terse Complaint was not enough.

C.

Gallo's new allegations may also affect the Court's Contract Clause analysis.

Here, he asks if the "Court h[eld] that 'seeking' rent equates to receiving it?" MFR at 5. No, the Court did not. When dismissing Gallo's Complaint, the Court noted that "the Filing Moratorium is not permanent and does not bar landlords from seeking past-due rent after its expiration." Mem. Op. at 15. That is true.

But now, Gallo alleges that "the occupant did not pay, did not 'apply' for assistance, [and] disappeared." MFR at 5. And he says that his injury is permanent because the debt is uncollectable. *Id.* at 5–6. This line of attack has a familiar defect. Gallo never pled that full set of facts in his Complaint. Had he, the result *might* have been different. Instead, he said that a "squatter occupying the unit was foreclosed nearly two years ago for not paying his bills for years prior." Compl. ¶ 2. And he noted that the District had not promised to pay him any

7

money. *Id.* That was not enough to show that his debt was uncollectable.[1] So the factual ambiguities plagued Gallo here as well.

### D.

Gallo also presses four more arguments that the Court found uncompelling.

*1. The Court should have taken judicial notice of articles that said landlords had no remedy available to them.* MFR at 2. Not so: The Court need not defer to the media's legal conclusions. *Cf. Knight First Amend. Inst. v. CIA,* 424 F. Supp. 3d 36, 44 (D.D.C. 2020), *aff'd,* 11 F.4th 810 (D.C. Cir. 2021) ("[I]f people believed everything written in newspapers, there would be no need for official confirmation through this FOIA suit."). Nor must it defer to other landlords' opinions. Nor is the Court bound by other cities' descriptions of their programs. MFR at 3 ("Some jurisdictions recognized that- precisely as I make clear here- *tenant* assistance programs do not assist *landlords*.") (emphasis in original).

*2. The Court improperly construed Gallo's estoppel argument.* MFR at 3. Gallo's initial estoppel argument was unclear. Gallo appeared to claim that the District had contradicted itself by arguing in Superior Court that Gallo could access the courts by filing a takings claim, then moving to dismiss his takings claim once he did so. Pl.'s Opp'n at 4–5, ECF No. 8. Now, he claims that his argument was really that the District contradicted itself when arguing in this litigation that Gallo could have applied for relief. That is inconsistent, he insists, with the Government's past admission that he could not, in fact, apply for relief. MFR at 3.

This argument fails. True, the District admitted in Superior Court that Gallo could not apply for relief without his tenant's cooperation. And it acknowledged that Gallo's applying for

---

[1] The Court declines Gallo's invitation to "clarify its interpretation of why certain cases may not 'control.'" MFR at 6. The Court already explained its view of why binding precedent compelled its decision in its previous Memorandum Opinion based on the facts before it.

relief "does not sound entirely practical . . . in his circumstances." MFR at 3. Yet Gallo points to nothing in the District's motion to dismiss that directly contradicts these admissions. Thus, because he points to no contradiction, his estoppel argument fails. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

*3. The Court was wrong that the filing ban had an end date.* MFR at 5. True, the filing ban was extended. *Id.* But it eventually ended. *See* Phasing Act; D.C. Code § 42-3505.01(b). So it had an end date.

## IV.

The Court remains skeptical that Gallo's case can succeed. To stand a chance, he should include *all relevant* facts in his Amended Complaint. For instance, if he could not have applied for any of the District's programs, he should plead facts that show why. If the Court must again dismiss Gallo's Complaint, it may do so with prejudice. *See Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray,* 424 F. Supp. 3d 26, 36 (D.D.C. 2020), *aff'd,* 848 F. App'x 428 (D.C. Cir. 2021) ("The Court will not give Plaintiffs a third bite at the apple.").

For these reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Reconsideration is GRANTED; it is further

**ORDERED** that this case shall be reopened; and it is further

**ORDERED** Plaintiff must file an Amended Complaint within 30 days from the entry of this Memorandum Order;

**SO ORDERED**.

Dated: March 1, 2023                                    TREVOR N. McFADDEN, U.S.D.J.