UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexander Gallo
*Plaintiff*

v.   Case 1:21-cv-03298-TNM
     Judge Trevor N. McFadden

District of Columbia
*Defendant*

### Plaintiff's Opposition to District's Motion to Dismiss Amended Complaint

After requesting multiple extensions of time, the District now taps out on the merits. Appropriation of my reversionary interests? Ignored. Appropriation of my leased fee interests? Ignored. Confiscation of income? Ignored. Appropriation of my leases? Ignored. Tenants becoming trespassers? Ignored. Lost rent as de facto taking? Ignored. StayDC? Unavailable to me.

The District instead now attempts new standing arguments precluded by state court rulings. This court cannot reopen such rulings and should not issue errant statements which would pollute or overturn the District's laws on home ownership.

*Introduction*

Section I of the Complaint concerns: *all* my condos and *all* my leases, requesting nominal damages, declaratory judgment, and mental anguish. The District recasts the complaint from the plural to the singular- pretending that only Section II's claim for just compensation on one unit exists. "Plaintiff does not allege that any of those tenants owe him any money or that they are illegally occupying his property or that they were when he filed this action" *Motion* at 2, morphing between present and past tenses to conflate the relief requested with arrearage. One other tenant was indeed in breach of lease when I filed this case in Superior Court in 2021- while remedy was "suspended." I spent two years being imminently threatened with massive losses across *all* units and pecuniary damages remain on the Foreclosure Unit. Some other tenants used StayDC to cover arrearage the District allowed them to accumulate. "A bank robber might give the loot back, but he still robbed the bank." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 (2019).



RECEIVED
5/9/2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

The District also states that this court is "well versed in the facts… and the moratoria at issue" and therefore "incorporates" facts from the first opinion by reference. *Motion,* at 2. But reconsideration centered on incorrect "facts" around "recourse," namely: (1) the court's initial statement that StayDC was made available to landlords as part of the statute or (2) evictions being available if payment plans were breached despite the Filing Ban. One further incorrect fact appears here: "the moratoria ended in 2021." *Motion to Dismiss*, at 2. It ended January 1, 2022: "Starting January 1, 2022, landlords may file eviction actions..." *Dist. of Columbia v. Towers*, 260 A.3d 693 (D.C. 2021), and the "payment plan" moratorium continued in force through July 2022.

**I.      Standing**

One new insinuation appears in several places in the motion to dismiss: that since I'm only personally a co-owner of the Foreclosure Unit, deeded in 2021, I have less "standing" to litigate the Foreclosure Unit. Both the Superior Court and the Court of Appeals granted my status as plaintiff in the first eviction because I had standing. I was the sole plaintiff in the second suit for possession against Hopkins, with judgment granted and eviction executed only upon presentation of ex parte proof. Same for the money suit against Hopkins. I was required to substantiate damages in my name. This court is not free to declare those judgments null on the same condo in which standing was affirmed by state court judges after evidentiary hearings.

The District trots out one new argument, and it's a doozy: "Plaintiff could have evicted Mr. Hopkins at any time." Motion at 6. This is gaslighting- complete BS. This suggests that the Filing Ban never really existed and that I could have evicted Hopkins in 2020 because- *surprise!* – his eviction could be re-captioned into an "ejectment" and immediately executed. This dodge was already raised before the Superior Court in 2020 and rejected:

> "According to the amici, "the filing moratorium only addresses the filing of summary claims for possession in the Landlord and Tenant Branch of this Court under D.C. Code § 16-1501, and nothing prevents a landlord from a civil action for ejectment that provides the same ultimate remedy of possession of the unit." Amicus Brief at 11.24 This argument does not have any support in the language of the statute, and the moratorium on the filing of eviction cases applies to cases in the Civil Actions Branch seeking possession under the ejectment statute, D.C. Code § 16-1101. Property owners may not circumvent the filing moratorium by artful pleading…Amici's interpretation would permit easy and complete avoidance of the filing moratorium by property owners…The Court agrees with one of the plaintiffs that "[i]f Civil Actions is indeed an immediately viable route for all landlords to take, as amici contend, the Superior Court could indeed dispose of the entire constitutional challenge by immediately certifying the entire docket of the Landlord & Tenant branch to the civil actions branch." See Reply Brief of Plaintiff Gallo Holdings LLC – Series 2, at 11 (filed Nov. 20, 2020)."- *DC v. Towers*, Epstein, 12/16/2020, at 26-30. See also footnote 12: "amici argue that the filing moratorium has limited effect because it does not apply to eviction cases that

invoke the ejectment statute and that are filed in the Civil Actions Branch, but the filing moratorium does not contain this gaping loophole"

This court is not free to overturn the Superior Court, travel back in time, declare that I could have somehow evicted Hopkins in 2020, and somehow retroactively breathe his eviction into existence.[1] Raising this nonsense again here- three years after it was rejected and the Hopkins eviction dismissed- seems like corruption. Filings and evictions were not allowed. The Filing Ban covered *all* commercial properties, *all* squatters and *all* "tenants." The Superior Court, with the District as intervenor, refused to allow "ejectment." The District's court system stayed then dismissed the eviction of Hopkins for two years- that is a *fact*.

The District's other "definitional" argument on the debt collection moratorium is also precluded by state court ruling. When I sued Hopkins for money judgment and put "not an attempt to collect a debt" on the claim (doing precisely what the District suggests I could have done: dodge the "debt" moratorium), the trial judge ruled that my claim was barred by the moratorium and would thus be stayed until it ended. The case was kicked until late September 2021. See *Order continuing case*, 2021-SC3-000523 (Judge Jones Bosier, 9/3/2021). My other lessees in breach? I couldn't sue them either and the District does not refute that.

**II.   Contracts Clause**

The District again attempts to spin the Complaint as one which only concerns one person in one unit ("prevent Plaintiff from evicting Mr. Hopkins" Motion, at 11). The Contracts Clause claim centers on multiple leases with multiple tenants which were impaired by the Filing Ban (with added impairment by the debt collection moratorium). The relief requested is declaratory judgment, $1 in nominal damage and mental anguish. The Contracts Clause section does not hinge only on Hopkins nor does a violation of the Contracts Clause require permanent pecuniary losses, but I included an implied lease with him anyway in the portfolio of impaired leases. The impairment was: categorical suspension of obligations by lessees.

---

[1] The Amended Complaint also includes the DC Council's written response (eg, the legislative intent) to another purchaser in this precise situation: a squatting former owner. The Council stated the new owner's "only" recourse was to write off his losses on his taxes (Paragraph 34, citing documents in the Superior Court docket). The District now argues this is a "mistaken belief," that it would have evicted all these people in 2020. But the court system refused to do so because of the Filing Ban. A video of that owner in the same boat was broadcast by ABC news: https://abcnews4.com/news/nation-world/while-eviction-moratorium-protects-tenants-many-property-owners-are-forced-to-pay-double. This court is not free to declare reality to not have existed when a guy is on the street, on the news, literally pointing to a house which the District has turned over to a squatter under the Filing Ban.

The District claims I have "not alleged the existence of a contract." *Motion*, at 12. But I did- and they all predate the Filing Ban as far back as 2006. See Amended Complaint, paragraph 28 ("all of Plaintiff's leases were thus declared legally unenforceable, leaving him in a precarious state of being personally liable for $7,000 per month in expenses while having his ability to enforce leases" suspended by the District) and paragraph 42 ("Plaintiffs other tenants began breaching their leases (not paying) while Plaintiff had no remedy"). The implied contract with Hopkins on which I became lessor by succession *predates* the Filing Ban.

Leases whose obligations are "suspended" by legislative decree are inherently "substantially" impaired while they are "suspended." A total suspension is a total impairment of the obligation during the suspension period. As the Supreme Court stated, regarding enforcement being suspended: "nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be…" *Edwards v. Kearzey*, 96 U.S. 595 (1877). Stay laws which superficially pretend to merely "delay" one party's obligations to the future (in reality, it never gets paid) are equally unconstitutional.

### III. Takings Clause

   a. Appropriation

The District's sole claim: if the "initial" entry by the *present* occupant was "lawful" (eg, if they didn't break in) then none of the four appropriations of distinct interests I raised can possibly occur. *Motion* at 14. This is a tautology.[2] Case in point: If reversion is not taken, I claim an appropriation of leases- express or implied. A lease only exists because an invitation was extended. So how does the "invitation" preclude a taking of a lease when the invitation is what *created the lease* in the first place? Similarly, reversionary interest in land exists only after the owner gives an estate or an easement (by invitation, or assuming such estate by operation of law) which has subsequently demised. The invitation does not negate the reversionary interest: *it creates it*.

What the District really desires is for this court to ignore the distinctly-pled claims and simply dismiss again by hinging the holding on whether "he invited the squatter." *March 1 Order* at 6 (speaking of a relationship entailing "voluntariness"). But a squatter holds adversely and thus

---

[2] "Mr. Hopkins entered the property lawfully, as its owner; he did not enter by the force of government action" Motion, at 14. True. And irrelevant. This claim concerns his occupancy beginning May 5, 2020- the date of the termination of his "tenancy" by Notice to Quit. He remained through May 2022 under the Filing Ban.

cannot presently be "invited." A squatter is someone who has wrongfully settled on the land of another without permission. *Black's Law Dictionary* 1533 (9th ed. 2009). They thus cannot be in a voluntary relationship with the owner of the land. Is an owner in a continuing relationship with a lessee post-breach, or a tenant at will whose tenancy was terminated (Hopkins)? The court did not resolve the question. Let's pick up where we left off, where the District has decided it has zero to add:

> "His novel argument goes like this: A tenant who stops paying rent is no longer a tenant. Id. And because the former tenant has no estate, that person "is no different than a member of the public." Id. So the Government "commits a physical taking when it grants possession to [that] person." Id. (emphasis in original).
>
> The Court disagrees. That person is different "than a member of the public" because that person was invited." -*Order Granting Reconsideration*, at 6.

The court did not specify which squares of my legal quilt it disagreed with here: (1) the tenant becomes a trespasser (2) the former tenant is no different than a member of the public or (3) the government is granting possession of the owner's house. All 3, I contend, are inescapable:

1. *A Tenant Becomes a Trespasser upon Breach or Termination*

First, I filed a Complaint stating that a "squatter" was residing at the government's invitation (the invitation being the Filing Ban) and requested declaratory judgment that when the government allows a squatter to occupy your house without payment, the house is physically taken.[3] The District moved to dismiss, recasting my Complaint from the plural to the singular and recasting Hopkins' status in the present tense to "tenant."[4] The Court then dismissed, stating no physical taking occurs where a landlord "invited" the "non-paying tenant."

It took a while to dawn on me. All these cases nationwide have glossed over the meaning of: "tenant." I moved for reconsideration on the basis there is no such thing as a "non-paying tenant." No estate, no tenant: just a squatter. This Court then granted reconsideration, changing the word while suggesting there is no physical taking of anything if the person presently squatting under a filing ban was, years ago, "invited."

---

[3] Technically speaking, Hopkins was briefly a "tenant at will" by operation of law- whose tenancy was terminated on May 5, 2020 by the same notice to quit used by the Superior Court to order him evicted under a new judgment for possession to me in 2022. His status changed from "tenant" to "squatter" in May 2020.

[4] Coincidental and innocent swap of words? Or: "lawyers hiding the legal ball" *Transamerica Leasing, Inc. v. Compania*, 93 F.3d 675 (9th Cir. 1996).

It took even longer to dawn on me: the magic word[5] here is probably: *trespasser*. My Amended Complaint introduced some authorities here in Footnote 14. More abound. Virginia's Supreme Court noted this in *Reston Recreation Center Associates v. Reston Property Investors Ltd. Partnership*, 238 Va. 419 (Va. 1989) ("because of the tenant's uncorrected default… the tenant ceased to be a tenant and became a trespasser"). As did Maryland's in *Metromedia v. WCBM Maryland*, 327 Md. 514 (1992) (occupant who refused to vacate upon notice "became a trespasser"). As did DC's in *Young v. District of Columbia*, 752 A.2d 138 (D.C. 2000) ("when…Young refused, he became a trespasser."). So have countless other state supreme courts.[6] And other foreign appellate courts.[7] And the Court of Military Appeals.[8] And the Restatement of torts: "An occupancy rightful because permissive becomes tortious when a proper demand to vacate is ignored and it is then the occupants *become trespassers* and damages for their wrongful occupancy begin to accrue." 1 Restatement, Torts, Sec. 158(b) (emphasis added).

And the U.S. Supreme Court (see next section). New York's Court of Claims held this affirming a claim under the takings clause. Where the State continued in possession of office space for two years after it breached the lease, the State became a trespasser. "if the State had refused to vacate, the claimant could have evicted defendant as a trespasser and sought damages for reasonable use and occupation" and "Having trespassed, defendant must pay damages to prevent its unjust enrichment." *Park Ave. Assocs. v. State*, 165 Misc. 2d 920 (N.Y. Ct. Cl. 1995).

---

[5] https://www.youtube.com/watch?v=RfiQYRn7fBg
[6] *Union Central Life Insurance v. Audet*, 94 Mont. 79 (Mont. 1933) ("the contract having been breached by the defendants, and they being in default…they were trespassers."), *Poole v. State*, 244 Ark. 1222 (1968) (tenant delinquent on rent for 10 days "has become a trespasser"), *Bethlehem Steel v. Shonk Land Co.*, 169 W. Va. 310 (W. Va. 1982) ("a lessee who remains…after termination of lease becomes a trespasser."), *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys.*, 165 Idaho 787 (Idaho 2019) ("where the tenant withholds possession after its lease is terminated… the holdover tenant is, at that point, a trespasser"), *Union Trust Co. v. National Coal Co.*, 20 A.2d 373 (R.I. 1941) ("After the date stated in the notice to quit, the defendants, who remained in possession of the premises, became trespassers"), *Weeks v. Sly*, 61 N.H. 89 (N.H. 1881) ("after the time fixed in the notice the plaintiff was a trespasser"), *Fragomeno v. Insurance Co.*, 207 Cal. App. 3d 822 (1989) (nonpayment notice results in "lessee becoming a trespasser"), *Williams v. Alt*, 123 N.E. 499 (N.Y. 1919) ("When Henry Mook died the lease made by him as owner of a life estate in the real property, to the respondent Alt, terminated…Alt, therefore…was a trespasser"), *Etheridge v. First National Bank of Jackson*, 387 S.W.2d 835 (Tenn. Ct. App. 1965) ("after that date he became a trespasser")
[7] *Protax Co-operative Society Ltd v Toh Teng Seng and Another*, [2001] SGHC 84 (Singapore High Court) (upon nonpayment, "the former tenant becomes a trespasser.")
[8] *United States v. Regalado*, 13 C.M.A. 480, 13 USCMA 480, 33 C.M.R. 12 (1963) ("On the forfeiture of his right he becomes a trespasser"). See also *United States v. Davis*, 73 M.J. 268 (2014) ("A person or invitee who refuses to leave after being rightfully asked to do so becomes a trespasser")

To highlight the impact of this predicate issue in recent rulings this court "joined," I've corrected the words.[9] It's ingenious, really: pass a law suspending repossession from trespassers, then trot out four words from *Yee* and claim the government takes nothing because "Petitioner's tenants were invited" (*Yee*, at 528)."[10] See for example Washington's brief to the 9th Circuit, citing this case 4 times, using the word "tenants" 74 times and proclaiming "Like the park owners in *Yee*…they did not suffer any trespass." Case: 22-35656, Ferguson Response, at 25.

That's the fraud. Breach cases aren't "like" *Yee* because there *is* trespass. The Supreme Court did not "invite" trespass in *Yee*, silently overturn *Willison* (see next section) and abrogate state law on trespass- all in four words. Alternatively, this court can hold that *Elmsford* and this new lower-court lineage was erroneous (confusing trespassers with tenants) while holding that appellate doctrine presented in the Amended Complaint and herein is correct. Such as: "the postponement of a reversionary interest that would otherwise vest under state law constitutes a taking of private property." *National Wildlife Federation v. I.C.C*, 850 F.2d 694 (D.C. Cir. 1988)

2. The Former Tenant Being "No Different Than a Member of the Public"

Unbeknownst to me when I first typed that up, I simply channeled how the Supreme Court put it in *Willison v. Watkins*, 28 U.S. 43 (1830): Where "the lessee forfeited…The landlord's action would be as against a trespasser, as much so as if no relation had ever existed between them." Not only does the relationship cease- it's as if the lease never existed at all. In fairness, there is one characteristic of a lessee in breach which makes them different than a member of the public: an equitable right to redeem for an innocent breach. But before redemption and *while in breach*, they are as the Supreme Court described. Many will never redeem- they will just squat, steal, and disappear, just like Hopkins did. The government could have redeemed for lessees (people who lost jobs, for example) and created a tenancy for Hopkins by compensating. It chose not to and claims here it need not pay to dole out residency in private homes.

---

[9] "Plaintiffs have temporarily lost the ability to expel ~~tenants~~…~~tenants~~ will continue to accrue arrearages" *Elmsford*, at 164. "plaintiffs voluntarily rented their properties to their ~~tenants~~" *Baptiste* at 388. "just as in *Yee*, Plaintiffs voluntarily invited ~~tenants~~" *Jevons*, at 1106. "laws governing the landlord-~~tenant~~ relationship" *Williams*, at 14. "landlords here have solicited ~~tenants~~ to rent their properties… simply regulates landlords' relationship with ~~tenants~~" *Southern California Rental Housing*, at 865. **Insert**: *trespassers*. The logical implosion is then obvious.
[10] Judge Judy cuts through in 3 minutes the underlying issue here. Judy: "Give me the month that you last paid rent." Defendant: "Ok…May" Judy: "so you last paid rent in May… So you're a *squatter*."
https://www.youtube.com/watch?v=Hto0kOH4qy8

3. *The Government Granting Possession*

This is affirmed by *Warthen*. The owner grants possession via a lease. When the lease terminates, the tenant is no longer possessing by lease- they are possessing by statute. By force of government action. "the effect of the section is to create a non-contractual statutory right of possession in the tenant." *Warthen v. Lamas*, 43 A.2d 759 (D.C. 1945).

Where such statute comes with compensation or requires compensation by the occupant, it is not an uncompensated taking of the owner's reversion but rather a compensated one. This is the basis of cases such as *Levy Leasing*: "The standard of the statute is as definite as the 'just compensation' standard adopted in the Fifth Amendment to the Constitution, and therefore ought to be sufficiently definite to satisfy the Constitution." *Levy Leasing Co., Inc. v. Siegel*, 258 U.S. 242 (1922). The Filing Ban's standard of compensation was: zero.

b. De Facto/Regulatory Taking

The District suggests I have not provided "facts" from which the non-collectability of a money judgment against a non-paying occupant can be "inferred." This is backwards: there is no requirement to prove the person robbing you today will not satisfy a money judgment when the government lets you sue them for the value of the robbery it invites them to commit, in order for a theft to occur. "where existence of a condition is shown it will be presumed to continue until the reverse is disclosed" *Henderson v. Mann*, 47 App. D.C. 174 (1917)- not vice versa. Hopkins is not going to ring my doorbell one day "in the future" with 30 grand in hand.

The owner's "expectation" is to receive reasonable rent: "'Distinct investment-backed expectations' implies reasonable probability, like *expecting rent to be paid*…" *Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) (emphasis added). For this court to hold that 2 years lost rent (either realized or threatened) is not a de facto taking would be to hold that the highest courts of New York (6 months), Arizona, Florida (one year), and Ohio are all wrong.

Lastly, I did not "acquire" the Foreclosure Unit "for free." My friend and I went to an auction house and spent 45 grand of our hard-earned money. See Section VI.

### IV. Judicial Estoppel Requires Finding a Taking

This court's initial opinion stated that my complaint was "much like" *Block v. Hirsch*. I moved for reconsideration on the ground that *Block v. Hirsh* did not permit occupancy post-breach or post-termination. It instead merely authorized extension of un-breached leases.

The District here takes a position contrary to what it took in *Block v. Hirsh*, while I take precisely the position it took there: compensation is required and extension of leases has history in equity. "The only limitation is that the essential property itself shall not be taken away, and that is not done when the owner *throughout the emergency period gets the fair and reasonable value of the use*" 256 U.S. 135, 151 (1921) (District's argument, emphasis added). Extending the opportunity to continue purchasing is based on a "natural equity beyond the technical termination of the term. This interest has been often recognized by courts as well as legislatures" Id at 152.

The same defendant is defending the same law- a filing ban for possession- under the same constitutional provisions. Their prior position should control here.

### V. Some Final Irrelevant Issues (Co-Ownership & Successors)

The District begins its motion with an irrelevancy to invite this court to go on new tangents and overturn or disrupt state law on home ownership, wills, sales and who knows what else. The implication is that a fractional owner has only fractional rights to possession or its value, or that someone's personal cash basis defines their interest (eg, if you inherit a house you have no rights), or that a successor assumes no rights, or whatever else. All untrue. Houses are co-owned by family members all the time, with one owner handling leases and collecting all the rent.

DC law is clear: "WIA also claims that because Gustave Ring was only part owner of the premises, he was entitled only to his pro rata share of the rent charged, not to the full amount specified in the lease. WIA is wrong." *Washington Ins. Agency, Inc. v. Friedlander*, 487 A.2d 599 (D.C. 1985) (footnote 11).[11] Successors prosecute evictions and arrearage: "Trans-Lux Radio City Corporation, successor to the interests of Mrs. McLean, and hereinafter referred to as the landlord, was added as party plaintiff and prosecuted the action" *Trans-Lux Radio City Corp. v. Service*

---

[11] Same elsewhere. "The leases not only applied to Ahearne's undivided half of the estate, but…extended over the entire premises…the rent being made payable to the lessor." *Austin v. Ahearne*, 61 N.Y. 6 (N.Y. 1874), citing *Badger v. Holmes*, 72 Mass. 118, 6 Gray 118 (1856) (each co-owner "owns the estate per mi et per tout" and "one tenant in common take the whole profits")

*Parking*, 54 A.2d 144 (D.C. 1947). Where a house is co-owned, "tenants in common are jointly seized of the entire estate, and each has an equal right to entry and possession, the possession of one being the possession of all." *Lyon v. Bursey*, 42 App. D.C. 519 (1914).[12] A successor acquires "in succession the same property interest" in a house or live contract. *Modiri v. 1342 Restaurant Group Inc*, 904 A.2d 391 (D.C. 2006).[13] The Supreme Court has similarly held, for a parcel under the Takings Clause: "Petitioner's acquisition of title after the regulations' effective date did not bar his takings claims…On remand the state court must address the merits of petitioner's Penn Central claim, which is not barred by the mere fact that his title was acquired after the effective date of the state-imposed restriction" *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001).[14]

The possession of the Foreclosure Unit was mine to claim during the Filing Ban. The arrearage back through 2020 is mine. Judgments were issued to me by state courts. If construed as an oral assignee instead of an owner, "A party is indispensable when he has an interest in the proceeding not distinct and severable…the assignor is not a necessary party to this suit." *Flack v. Laster*, 417 A.2d 393 (D.C. 1980). Co-owners can claim against each other, but each has full standing to possess or lease.[15] One owner frequently assumes the job of "managing and carrying it on to the best advantage for those interested, and guarding it for himself and his co-tenant." *Cooper v. Cooper*, 173 Vt. 1 (Vt. 2001). Simply: grandma doesn't need to join lawsuits.

If the court is curious, I am *personally* liable for *all* the HOA dues on the Foreclosure Unit going back to March 2020 and am/was *personally* liable for the cost of capital used to purchase it

---

[12] See also DC Code § 16–1101(b): "tenants in common may sue either jointly or separately." The Supreme Court has recognized this multiple times: "they have each and equally a right of possession" *Bohlen v. Arthurs*, 115 U.S. 482 (1885); "all owners technically have the right to possess and use the entire property" *Pakdel v. City and County of San Francisco*, 594 U.S. _ (2021).

[13] Similarly, a successor owns- as personal property- damages from a breach prior to succession. *Oreze v. Eastern Shore*, No. 220072 (Va. 2023), and citing *City of Lynchburg v. Mitchell*, 114 Va. 229 (1912) (holding that a successor can claim under the takings clause and "It is immaterial what the purchaser paid for the rights acquired by him, as this could neither decrease nor increase the city's liability").

[14] Even if there were a total sale, which there was not: "The mere sale of a property does not expunge the rights of the prior owner, which become vested in the new owner, to compensation for taking its property." *900 G Street Associates v. DHCD*, 430 A.2d 1387 (D.C. 1981); "Hamilton and its predecessor in interest had a reasonable expectation that…" *Hamilton Bank v. Williamson Cty. Reg. Planning*, 729 F.2d 402 (6th Cir. 1984).

[15] See for example Alfred A. Heon, *The Liability of a Cotenant to Other Cotenants for Rent, Profit and Use and Occupation*, 42 Marq. L. Rev. 363 (1959); *Fenton v. Miller*, 116 Mich. 45 (1898) (suit between co-owners for partition to pro rata shares). Similarly, where a 2/33rd owner of a mineral estate signed a lease on the whole field, "the manner in which the interest of a cotenant is acquired is of no importance" and the lessee assumes the right to drill the whole field because "A tenancy in common is characterized by a single unity, that of possession or of the right to the possession" *Earp v. Mid-Continent Petroleum Corp.*, 167 Okla. 86 (Okla. 1933)

in March 2020. This liability - including cash personally paid to avoid fresh foreclosure through 2022 and *personally* having to pay another 30 grand to repair it when Hopkins left- is substantial and would suffice for standing on that unit even if I were not a deed holder. I own several rental units in DC personally, acquired before the Filing Ban, which removes any standing doubts.

*Conclusion*

The new "definitional" standing arguments concerning ejectment and debt collection exemption are precluded by state court rulings in this case and wrong on the merits. I was an owner of the Foreclosure Unit during the Filing Ban- case closed. And I still am.

On the merits, eviction bans covering *all grounds* for possession thus cover both tenants and trespassers. So this Court was not incorrect to suggest *Yee* could apply to "the" Filing Ban, but the Filing Ban is really twelve distinct filing bans- one for each cause of action for possession. See Amended Complaint paragraphs 16-18. See also *Dist. of Columbia v. Towers*, 260 A.3d 690 (D.C. 2021) ("Starting January 1, 2022, landlords may file eviction actions for any of the ten lawful bases") (referring to the ten lawful bases under the Rental Housing Act. The eleventh is terminated tenants at will and the twelfth is the box "not a tenant"). This case implicates 2 grounds: breach of lease and terminated tenant at-will. The distinction between the 12 causes of action is critical.

*Yee* concerned rent control, where a landlord and tenant were in continual privity. No breach, no termination, no trespass. There was no "gauntlet" to run under *Yee* for nonpayment- the tenant would have become a trespasser under that law if they breached.[16]

Respectfully submitted,

*Alexander Gallo*
Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

---

[16] *Brummagim v. Spencer*, 29 Cal. 661 (Cal 1866) ("forfeiture of the estate of the tenant" immediately upon notice), *Davidson v. Quinn*, 138 Cal.App.3d Supp. 9 (1982) (same), *Fragomeno v. Insurance Co.*, 207 Cal. App. 3d 822 (1989) (nonpayment notice results in "lessee becoming a trespasser"), *Greenberg v. Koppelow*, 76 Cal.App.2d 631 (1946) ("their former *tenant* was automatically converted into a *wrongdoer* (see 32 Am.Jur. 779, citing Blumenberg v. Myres, 32 Cal. 93 [91 Am.Dec. 560]) or a *trespasser*") (emphasis original). The "gauntlet" referred to by *Yee* was changing the property's use: removing the land from the rental market, not removing a trespasser from the land.

## **Certificate of Service**

I certify that on May 9th, 2023, a copy of this Opposition is served by electronic mail on:

Andy.saindon@dc.gov

Mateya.kelley@dc.gov

/s/ Alexander Gallo