## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER GALLO,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:21-cv-03298-TNM** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
### SECOND AMENDED COMPLAINT

Defendant the District of Columbia (the District) moves to dismiss Plaintiff's Second Amended Complaint [50] (SAC). Fed. R. Civ. P. 12(b)(1), 12(b)(6). Plaintiff is a real property owner alleging violations of the Constitution, bringing suit under 42 U.S.C. § 1983. Specifically, Plaintiff is challenging two temporary moratoria, and a payment plan requirement, enacted in response to the COVID-19 pandemic that allegedly affected his property rights.

Plaintiff apparently alleges that the challenged laws resulted in an uncompensated "Taking" under various theories, *see* SAC at 10–15, and that the moratoria violated the Contracts Clause, *id*. at 16–17. Plaintiff seeks compensatory and nominal damages, a declaratory judgment, and attorney's fees and costs. *See id*. at 10–20.

As set forth in the accompanying memorandum of points and authorities, Plaintiff's claims should be dismissed because the SAC is not the "short and plain statement of the claim" required by Rule 8 but is instead rife with inappropriate language, legal argument and citations, and vague assertions that manifestly fails to comply with the rule and the Court's Order.

Notwithstanding this, the SAC should be dismissed for lack of standing because it does not plausibly allege that Plaintiff was injured by any government action.  Additionally, the SAC should be dismissed based on Plaintiff's failure to state a claim under 42 U.S.C. § 1983, because no District action was the moving force behind any alleged harm to Plaintiff.  Finally, the SAC should be dismissed because it fails adequately to allege constitutional violations: (1) under the Contract Clause, because Plaintiff has not alleged a substantial impairment of a contractual relationship; and (2) under the Takings Clause, because Plaintiff was not subject to a physical or regulatory taking.  A proposed order is attached.

Date:  August 25, 2023.                        Respectfully submitted,

                                               BRIAN L. SCHWALB
                                               Attorney General for the District of Columbia

                                               STEPHANIE E. LITOS
                                               Deputy Attorney General
                                               Civil Litigation Division

                                               MATTHEW R. BLECHER
                                               Chief, Civil Litigation Division, Equity Section

                                               */s/ Honey Morton*
                                               HONEY MORTON [1019878]
                                               Assistant Chief, Equity Section

                                               */s/ Mateya B. Kelley*
                                               MATEYA B. KELLEY [888219451]
                                               Assistant Attorney General
                                               Civil Litigation Division
                                               400 6th Street, NW
                                               Washington, D.C. 20001
                                               Phone: (202) 724-5824
                                               mateya.kelley@dc.gov

                                               *Counsel for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on August 25, 2023, a copy of Defendant's Motion to Dismiss Plaintiff's

Second Amended Complaint was served by electronic mail, with Plaintiff's consent, on:

> Alexander Gallo
> aogallo@gwmail.gwu.edu
>
> *Plaintiff Pro Se*

*/s/ Mateya B. Kelley*
MATEYA B. KELLEY [888219451]
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALEXANDER GALLO,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:21-cv-03298-TNM** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>

Table of Contents

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

LEGAL STANDARD....................................................................................................... 7

    I.    Federal Rule of Civil Procedure 12(b)(1) ...................................................... 7

    II.   Federal Rule of Civil Procedure 12(b)(6) ...................................................... 8

    III.  Federal Rule of Civil Procedure 8 ...............................**Error! Bookmark not defined.**

ARGUMENT ..................................................................................................................... 9

    I.    Plaintiff's Second Amended Complaint Fails to Comply with Rule 8........................... 9

    II.   Plaintiff Lacks Standing to Challenge the Moratoria. ................................. 11

    III.  Plaintiff's Claims Should Be Dismissed Because the Moratoria Did Not Cause Him Harm as Required to Prove Constitutional Claims Under Section 1983. ..................... 16

    IV.  Plaintiff Fails to State a Claim for Violation of the Contracts Clause.......................... 16

    V.   Plaintiff Fails to State a Claim for Violation of the Takings Clause. .......................... 18

         A.   Plaintiff Does Not Allege a Physical Taking. ....................................... 18

         B.   Plaintiff Does Not Allege a Regulatory Taking...................................... 21

    CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abhe & Svoboda, Inc. v. Chao,*
  508 F.3d 1052 (D.C. Cir. 2007)...................................................................8

*\*Adm'r of Veterans Affs. v. Valentine,*
  490 A.2d 1165 (D.C. 1985) .......................................................................14

*Allied Structural Steel Co. v. Spannaus,*
  438 U.S. 234 (1978) ..................................................................................17

*Am. Freedom Law Ctr. v. Obama,*
  821 F.3d 44 (D.C. Cir. 2016) ......................................................................8

*Anderson v. William J. Davis, Inc.,*
  553 A.2d 648 (D.C. 1989) .........................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................8

*Atherton v. District of Columbia Office of the Mayor,*
  567 F.3d 672 (D.C. Cir. 2009).....................................................................8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................8

*Bowman v. Iddon,*
  848 F.3d 1034 (D.C. Cir. 2017)...................................................................8

*\*California v. Texas,*
  141 S. Ct. 2104 (2021)..........................................................................11, 12

*Cedar Point Nursery v. Hassid,*
  141 S. Ct. 2063 (2021)...............................................................................19

*Ciralsky v. CIA,*
  355 F.3d 661 (D.C. Cir. 2004)................................................................7, 10

*Covad Communications Co. v. Bell Atl. Corp.,*
  407 F.3d 1220 (D.C. Cir. 2005)................................................................8, 9

*Crockett v. Deutsche Bank Nat'l Trust,*
  16 A.3d 949 (D.C. 2011) ...........................................................................14

*DaimlerChrysler Corp. v Cuno,*
  547 U.S. 332 (2006) ..................................................................................11

*Davis v. FEC,*
  554 U.S. 724 (2008) ..................................................................................11

*Delta Air Lines, Inc. v. Export-Import Bank,*
  85 F. Supp. 3d 250 (D.D.C. 2015)..............................................................11

*\*Dist. Intown Properties Ltd. P'ship v. Dist. of,*
  198 F.3d 874 (D.C. Cir. 1999)...............................................................21, 22

*\*District of Columbia v. Towers,*
  260 A.3d 690 (D.C. 2021) .................................................................2, 5, 6, 12

*El Paso v. Simmons,*
  379 U.S. 497 (1965) ..................................................................................17

*Erickson v. Pardus,*
  551 U.S. 89 (2007) ......................................................................................8

*FCC v. Fla. Power Corp.*,
  480 U.S. 245 (1987) ............................................................................................... 19
*Gavin v. Dep't of Air Force*,
  324 F. Supp. 3d 147 (D.D.C. 2018)........................................................................ 10
*Hernandez v. Banks*,
  84 A.3d 543 (D.C. 2014) ..................................................................... 13, 14, 15, 17
*Himex Co., Inc. v. United States*,
  17 F. Supp. 3d 77 (D.D.C. 2014).............................................................................. 8
*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934) ............................................................................................... 18
*Jiggetts v. District of Columbia*,
  319 F.R.D. 408 (D.D.C. 2017) ........................................................................... 7, 10
*Kaiser Aetna v. United States*,
  444 U.S. 164 (1979) ............................................................................................... 19
*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ............................................................................................... 19
*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982) ......................................................................................... 19, 20
*Lucas v. S. Carolina Coastal Council*,
  505 U.S. 1003 (1992) ....................................................................................... 19, 20
*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ......................................................................................... 16, 22
*Nat'l Ass'n of Home Builders v. EPA*,
  786 F.3d 34 (D.C. Cir. 2015)................................................................................... 11
*Nicholas v. Howard*,
  459 A.2d 1039 (D.C. 1983) ................................................................... 13, 15, 17
*Penn Central Transportation Company v. New York City*,
  438 U.S. 104 (1978) ............................................................................................... 21
*Pernell v. Southall Realty*,
  416 U.S. 363 (1974) ......................................................................................... 13, 20
*Poblete v. Indymac Bank*,
  657 F. Supp. 2d 86 (D.D.C. 2009)............................................................................ 7
*PruneYard Shopping Center v. Robbins*,
  447 U.S. 74 (1980) ................................................................................................. 19
*Raja v. FDIC*,
  2021 WL 508578 (D.D.C. Feb. 11, 2021) .............................................................. 10
*Satterlee v. Comm'r of Internal Revenue*,
  195 F. Supp. 3d 327 (D.D.C. 2016)..................................................................... 7, 10
*Scruggs v. Bureau of Engraving & Printing*,
  200 F. Supp. 3d 78 (D.D.C. 2016)............................................................................ 8
*Simpson v. Jack Spicer Real Estate, Inc.*,
  396 A.2d 212 (D.C. 1978) ...................................................................................... 14
*Smith v. District of Columbia*,
  413 F.3d 86 (D.C. Cir. 2005)................................................................................... 16
*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................... 11

iv

*Stewart v. Nat'l Educ. Ass'n*,
   471 F.3d 169 (D.C. Cir. 2006)............................................................................8
*Surrat v. Real Estate Exch.*,
   76 A.2d 587 (D.C. 1950) .............................................................................14, 15
*Sveen v. Melin*,
   138 S. Ct. 1815 (2018)................................................................................16, 17
*T.M. v. District of Columbia*,
   961 F. Supp. 2d 169 (D.D.C. 2013)...................................................................10
*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   535 U.S. 302 (2002) ..........................................................................................21
*Texaco, Inc. v. Short*,
   454 U.S. 516 (1982) ..........................................................................................17
*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021).........................................................................................11
*West v. Atkins*,
   487 U.S. 42 (1988) ......................................................................................16, 22
*Woodson v. Smith*,
   2021 WL 4169357 (D.D.C. Sept. 14, 2021)....................................................8, 9
*Yee v. City of Escondido*,
   503 U.S. 519 (1992) ..........................................................................................19

## Statutes

42 U.S.C. § 1983.................................................................................2, 16, 22
D.C. Code § 16-1501 ...............................................................................12, 13
D.C. Code § 16-1101 ......................................................................................13
D.C. Code § 16-1111 ...............................................................................13, 15
D.C. Code §§ 16-1114 .....................................................................................13
D.C. Code § 16-1109(a)(2) ..............................................................................15
D.C. Code § 42-1601 ........................................................................................7
D.C. Code § 42-3505.01(q)..............................................................................14
D.C. Code §§ 42-3505.01(k)(3) .......................................................................13
D.C. Code 7-2304.01 .......................................................................................12
U.S. Const., Art. I, § 10, cl. 1...........................................................................16
U.S.C. § 1983...................................................................................................16

## Rules

Fed. R. Civ. P. 8.....................................................................................7, 9, 10
Federal Rule of Civil Procedure 12(b)(1) ...........................................................8
Federal Rule of Civil Procedure 12(b)(6) ...........................................................8

## INTRODUCTION

In June 2021, Plaintiff Alexander Gallo obtained a 1% interest in a condominium obtained by his co-owner at a foreclosure sale.  At the time, Plaintiff knew that the foreclosed homeowner had been continuing to occupy the property for more than a year after the foreclosure sale, without a lease and without payment of any sort.  And Plaintiff knew that the District of Columbia (the District) had passed a number of laws temporarily suspending landlords' ability to evict tenants from rental housing units during the COVID-19 pandemic, or to initiate suits for debt collections, laws which were in effect when he obtained his interest in the property.  Nonetheless, Plaintiff now claims that these laws violated his constitutional rights and caused him tens of thousands of dollars in damages.

Additionally, Plaintiff has "direct or beneficial" interests in nine other condo units in the District.  Plaintiff does not allege any compensatory damage claims in connection with these properties, but appears to allege some abstract constitutional violations resulting from the conceptual suspension of his rights related to those properties.

Plaintiff's claims should be dismissed for multiple, alternative reasons.  *First*, the Second Amended Complaint (SAC) fails to comply with Rule 8; it is needlessly prolix and explicitly fails—as directed by the Court—to focus on "the specific facts relevant to the case and the claims [Plaintiff] advances" and fails to "clarify which claims apply to which [rental] units." Order [49] at 1, 2.

*Second*, Plaintiff lacks standing to pursue his claims because he has not plausibly alleged any injury caused by the District.  He alleges no concrete injury related to the nine non-foreclosed properties.  He alleges damages related to the foreclosed property, but these damages stem from his belief that he could not evict the foreclosed homeowner because of the temporary laws, and this belief is mistaken.  Plaintiff could have filed an action for ejectment at any time;

he simply failed to do so.  *Third*, for the same reason, Plaintiff fails to state a claim under 42 U.S.C. § 1983:  Plaintiff cannot show that *the District* deprived him of any federal or constitutional right, as required by that statute.

*Finally*, even if this Court finds that the challenged laws somehow injured Plaintiff, Plaintiff has failed to state claims for violations of the Contracts or Takings clauses.  With respect to the foreclosed unit, he has not alleged the existence of any lease or contract related to the foreclosed unit, let alone substantial interference with any lease or contract; nor has he alleged a compelled physical invasion or interference with his reasonable investment-backed expectations.  With respect to the other nine units referred to in the SAC, any conceivable claims should be dismissed for the reasons stated in this Court's opinion of June 21, 2022; after multiple bites at the apple, Plaintiff has alleged no new material facts about these properties. Accordingly, the Court should dismiss Plaintiff's Second Amended Complaint with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is well versed in the basic facts concerning the onset of the COVID-19 pandemic in 2020, and the moratoria at issue here, enacted by the Council for the District of Columbia (the Council) in response to the pandemic.  The District incorporates those facts as stated in the Court's June 21, 2022 opinion in this matter.  *See* [18] at 1–4; *see also District of Columbia v. Towers*, 260 A.3d 690, 692–93 (D.C. 2021).

To briefly recap, in the midst of nationwide stay-at-home orders, the Council enacted emergency measures to prevent the filing of summary actions for possession of real property (the Filing Moratorium) or collection of debts (the Debt Collection Moratorium) and requiring certain landlords and tenants to enter into payment plans (the Payment Plan Program).  *Id.* at 2–4.  The Council also created a program "to assist property owners facing financial strain from unpaid

rent," by providing financial assistance to cover unpaid rent and utility payments, known as "STAY DC." *Id.* at 3.  The moratoria ended in 2021, *id.* at 4, with a very brief extension in early 202, *see* Superior Court of the District of Columbia, Third General Order Regarding Debt Collection Cases (Feb. 1, 2022), *available at* https://tinyurl.com/4swh4hn9 (explaining brief extensions of public health emergency in early 2022, and related brief renewal of the Debt Collection Moratorium).

Plaintiff Alexander Gallo "owns residential condos in the District (some directly, some beneficially).  Plaintiff manages all ten, as well as personally guarantees expenses on all ten." SAC ¶ 1.  In "most" of Plaintiff's units "tenants occupy under leases."  *Id.* ¶ 2.  One of those units was purchased at a foreclosure auction (the "Foreclosure Unit").  *Id.* ¶ 4.  Plaintiff alleges he purchased the Foreclosure Unit in February 2020.  *Id.*  In reality, according to documents signed and filed by Plaintiff in the Superior Court for the District of Columbia (Superior Court), Gallo Holdings LLC – Series 2 LLC (Gallo Holdings) acquired the property in February 2020; Plaintiff acquired a 1% interest in it, for free, in June 2021.  *See* Ex. A, *Gallo v. Hopkins*, Case No. 2022 LTB 000672, Verified Compl. for Possession of Real Property (filed Feb. 18, 2022) at 2, 3, 6, 19–22.  The Foreclosure Unit was occupied by its former owner Andre Hopkins after the sale, *id.* ¶ 8, and through May 2022, *id.* ¶ 43.  Plaintiff never entered into a lease agreement with Mr. Hopkins.  *Id.* ¶ 4.

Plaintiff alleges that "[a]s of summer 2021," three total units were "paying zero."  *Id.* ¶ 35.  But Plaintiff does *not* allege he is owed any money for lost rent (or fair use value) on any unit *other than* the Foreclosure Unit.  *Id.* at 16; *see generally* SAC.  (Apparently, Plaintiff was ultimately compensated for other lost rent, by the tenants, or by StayDC.  *Cf.* ¶ 34.)  Mr. Hopkins "never applied for relief" through the StayDC program.  *Id.* ¶ 40.  Plaintiff alleges he is owed

$36,400 for the "fair use value" of the Foreclosed Unit while Mr. Hopkins occupied it. *Id.* at 16. Plaintiff also alleges he has obtained a money judgment for as much as $20,000 of those damages, though it "remains unsatisfied and is non-collectible." *Id.* ¶ 37.

In May 2020, Gallo Holdings attempted to evict Mr. Hopkins by filing a complaint for summary eviction in the Landlord & Tenant Branch of the Superior Court. *See* Ex. B, *Gallo Holdings LLC – Series 2 v. Andre Hopkins*, Case No. 2020 LTB 008032, Verified Compl. for Possession of Real Property (filed May 5, 2020). Gallo Holdings was represented by counsel. *Id.* In the May 5, 2020 filing, using a template complaint, Gallo Holdings's counsel averred that the defendant, Andre Hopkins, was "not a tenant," but rather a "foreclosed homeowner holding over . . . ." Ex. B to Motion at 4. In the section concerning relief, counsel also checked a box indicating that Gallo Holdings sought a "protective order requiring that all future rent be paid into the Court Registry," but crossed out "rent" and wrote "fair use and occupancy value." *Id.*

On July 28, 2020, the Presiding Judge of the Superior Court's Civil Division issued a General Order directing that, in all cases filed in the Landlord & Tenant Branch on or after March 11, 2020, and seeking a judgment for possession, the plaintiffs would receive an order to show cause why the case should not be dismissed in light of the Filing Moratorium. *See* Judge Laura A. Cordero, General Order (July 28, 2020), *available at* https://tinyurl.com/y2y2t5cl. The Order appointed the Honorable Anthony C. Epstein "to adjudicate all questions of law common to" these eviction cases without formally consolidating them. *Id.* After the orders to show cause issued, numerous plaintiffs, including Gallo Holdings, responded with briefing that raised many claims, including that the moratoria violated their right of access to the courts and the Contracts Clause, and that the moratoria effected a taking without just compensation. *See* Case No. 2020

LTB 008032, Order of Oct. 20, 2021.  The District intervened under Superior Court Rule 5.1 for the limited purpose of defending the moratoria against constitutional claims.  *Id*. at 3.

On December 16, 2020, the Superior Court declared the Filing Moratorium unconstitutional, concluding that it violated the right of access to the courts.  *See id.* Order of Dec. 16, 2020.  The order was stayed pending appeal.  Am. Compl. ¶ 37.  On October 7, 2021, the District of Columbia Court of Appeals reversed the ruling, concluding that the Filing Moratorium did *not* violate property owners' right of access to courts.  *District of Columbia v. Towers*, 260 A.3d 690 (D.C. 2021), *cert. denied*, ___ S. Ct. ___ (Jan. 10, 2022).  Neither court reached the Contracts or Takings clause claims.  *Id*.

Soon after, Plaintiff sued the District in the Superior Court (Case No. 2021 CA 004322 B), alleging that the Filing and Debt Collection moratoria, and the Payment Plan Program, infringed his constitutional rights.  The District removed the matter to this Court [1], and then moved to dismiss [6-1].  The Court granted the District's motion to dismiss, Order of June 21, 2022 [18], finding that:

- Plaintiff's constitutional right-of-access-to-courts claim concerning the Filing Moratorium was barred by the doctrine of claim preclusion.  *Id*. at 7.

- Plaintiff conceded dismissal of his right-of-access claim concerning the Debt Collection Moratorium by not responding to the District's arguments.  *Id*. at 10.

- Plaintiff lacked standing to challenge the Payment Plan Program.  *Id*. at 6.

- "[T]he Filing Moratorium [did] not substantially impair Gallo's rights under the Contracts Clause," because it did not extinguish his rights to payment, but merely delayed them.  *Id*. at 10–15.

- There was no physical taking because Plaintiff "invited the nonpaying tenant," Mr. Hopkins, "onto his property." *Id*. at 16.

- There was no regulatory taking because "Gallo could not reasonably believe that the District would never try to regulate his leases" and "the District provided avenues for Gallo to recoup some of his purported losses," including the Payment Plan Program and avenues to eviction, which Plaintiff did not allege he pursued. *Id*. at 21–22.

Plaintiff moved for reconsideration, and the Court granted the motion and leave to file an amended complaint. Plaintiff's Mot. for Reconsideration, [22]; Order of March 1, 2023 [34]. The Court focused on Plaintiff's claims concerning a "squatter" in "one of his condos." [34] at 2. It highlighted some new facts asserted in the motion for reconsideration, and explained that they might affect the Court's Contracts and Takings clause analyses, if alleged in a complaint. *Id*. at 3–9. Specifically, the Court questioned, first, whether the "squatter was at one point 'paying his bills' and thus presumably invited there by Gallo;" if not, then perhaps the Court's physical takings analysis would come out differently. *Id*. at 4–5. Second, the Court questioned whether Plaintiff "ever tried to use the District's programs." *Id*. at 7. If he had tried, perhaps that would affect the Court's regulatory takings analysis. *Id*. at 6–7. Third, and finally, the Court questioned whether and why the debt allegedly owed to Plaintiff was truly uncollectable, because, if so, that might be more like a permanent injury rather than the temporary delay presumed by the Court's Contracts Clause analysis. *Id*. at 7.

Plaintiff filed his Amended Complaint [36] on March 16, 2023. The Amended Complaint renewed the claims under the Contracts and Takings Clauses, but not the right-of-access claim. *Id*. On May 4, 2023, the District filed a Motion to Dismiss [42] the Amended Complaint, which Plaintiff opposed [44]. By Order dated July 10, 2023 [49], the Court denied

the District's Motion to Dismiss as moot, finding that Plaintiff had failed to comply with Fed. R. Civ. P. 8. Order [49] at 1. The Court directed Plaintiff to file an amended complaint that complied with Rule 8. *Id.*

Plaintiff filed the SAC on or about July 21, 2023. *See* [50]. Plaintiff apparently again challenges the Filing and Debt Collection moratoria, *id.* at 2, as violating the Takings and Contracts clauses.[1] He seeks nominal and compensatory damages, as well as a declaratory judgment on both claims, *id.* at 10, 16.

## LEGAL STANDARD

### I.   <u>Federal Rule of Civil Procedure 8</u>

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "[T]he court or opposing party must be able to understand whether a valid claim is alleged and if so what it is." *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) (Jackson, J. Ketanji Brown) (quoting *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009)). Enforcing the rule "is largely a matter for the trial court's discretion." *Satterlee v. Comm'r of Internal Revenue*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)). "If a plaintiff has been given ample opportunity to comply with Rule 8 but fails to do so, or if the amended pleading suffers from similar insufficiencies, then it is appropriate for the Court to dismiss the case without providing another opportunity to amend." *Jiggetts*, 319 F.R.D. at 414 (citing, among others, *Ciralsky*, 355 F.3d at 669).

---

[1]      Plaintiff also mentions the "Writ of Waste (D.C. Code § 42-1601) among his damages claims, *id.* at 20; the District understands this be a part of Plaintiff's claim for damages under the Takings Clause, *id.* at 20 (citing case allegedly holding that "just compensation for temporary takings includes restoration damages")).

II.    **Federal Rule of Civil Procedure 12(b)(1)**

A complaint must be dismissed if the court lacks subject matter jurisdiction over the claims raised.  *See* Fed. R. Civ. P. 12(b)(1); *Himex Co., Inc. v. United States*, 17 F. Supp. 3d 77, 79 (D.D.C. 2014).  This is so when the plaintiff lacks standing.  *See Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).  When a defendant challenges the Court's subject matter jurisdiction, it becomes the plaintiff's burden to "establish[] jurisdiction by a preponderance of the evidence."  *Scruggs v. Bureau of Engraving & Printing*, 200 F. Supp. 3d 78, 81 (D.D.C. 2016).

III.   **Federal Rule of Civil Procedure 12(b)(6)**

A complaint must be dismissed when a party has failed to set forth "a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although pro se complaints are held to "less stringent standards" than pleadings drafted by lawyers, "a pro se plaintiff cannot escape the requirements of *Iqbal* and *Twombly*."  *Woodson v. Smith*, Civil Action No. 20-2668, 2021 WL 4169357, *2 (D.D.C. Sept. 14, 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009).  "[T]he court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)); *see also Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (considering pro se affidavits and exhibits, as well as public record subject to judicial notice, with motion to dismiss pro se complaint); *Covad Communications Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir.

2005) (explaining "court may look to record of another proceeding to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted") (internal quotation marks omitted).

## ARGUMENT

### I.   Plaintiff's Second Amended Complaint Fails To Comply with Rule 8.

Plaintiff's Second Amended Complaint fails to address any of the problems identified by the Court in the previous complaint, such as a failure to focus "on the specific facts relevant to the case" and including "large sections better suited to a legal brief[.]"  Order [49] at 1.  The SAC contains the same defects.

The Court previously found that while the District's prior motion to dismiss was centered on the Foreclosure Unit, Plaintiff's opposition argued that he was suing for *all* his condos and leases.  *Id*.  "But [Plaintiff] gives almost no information about them."  *Id*.  The Court directed Plaintiff to file a second amended complaint, within 30 days, specifically mandating that it "shall not include extensive legal arguments and shall include 'a *short and plain* statement of the claim showing that the pleader is entitled to relief.'"  *Id*. at 2 (emphasis in original) (quoting Fed. R. Civ. P. 8).  "And [Plaintiff] must clarify which claims apply to which units."  *Id*.

Plaintiff has failed to do so.  The rambling complaint manifestly fails to provide any "short and plain statement" of the claims and is arguably more opaque than the previous incarnations.  Moreover, Plaintiff provides very little information about the units involved, including whether he actually owns them, whether they *all* had leases (other than the Foreclosure Unit), or whether he is owed any money in connection with those units.  *Cf*. SAC ¶ 1 (Plaintiff's "personal liability" for expenses is approximately $7,000 per month); ¶ 32 ("Throughout winter and spring of 2021, some of Plaintiff's lessees began breaching their leases (not paying) . . . ."); ¶ 33 ("[T]wo of Plaintiff's lessees became trespassers in spring 2021 . . . .") (footnote omitted); ¶

34 (one "defaulted lessee" owed "roughly $6,000" as of December 2021); ¶ 35 ("As of summer

2021, Plaintiff thus had three units paying zero while he had no remedy."); *id.* at 16 (unpaid

occupancy of Foreclosure Unit valued at $36,400).

Additionally, the SAC is rife with legal argument and citations and quotes from news

articles and YouTube videos from *other* jurisdictions, interwoven with Plaintiff's commentary on

his situation and that of lessors generally. The SAC fails to comply with Rule 8 and should be

dismissed on that basis alone. *See*, *e.g.*, *Satterlee*, 195 F. Supp. 3d at 334 ("[P]laintiff quotes at

length from a multitude of statutes, regulations, and documents, providing little by way of

context or explanation, and unnecessarily repeats his allegations several times throughout.").

> "Still, a complaint that is excessively long, rambling, disjointed, incoherent, or
> full of irrelevant and confusing material" will patently fail the Rule's standard,
> and so will "a complaint that contains an untidy assortment of claims that are
> neither plainly nor concisely stated, nor meaningfully distinguished from bold
> conclusions, sharp harangues and personal comments."

*Jiggetts*, 319 F.R.D. at 413 (quoting *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 174

(D.D.C. 2013)). *See also Raja v. FDIC*, Civil Action No. 16-cv-0511 (KBJ), 2021 WL 508578,

*2 (D.D.C. Feb. 11, 2021) (same).

Where, as here, a complaint "leaves the reader guessing exactly what her claims are [and]

how her disjointed factual allegations support those claims[,]" *Gavin v. Dep't of Air Force*, 324

F. Supp. 3d 147, 151 (D.D.C. 2018), it may be dismissed, especially as Plaintiff has had more

than one bite at this apple. *See Jiggetts*, 319 F.R.D. at 419 ("Here, the Court has decided to

follow the well-established practice of dismissing the case when a plaintiff has already been

afforded the opportunity to amend her pleading but has failed to cure the infirmities.") (citing

*Ciralsky*, 355 F.3d at 669).

II.   **Plaintiff Lacks Standing To Challenge the Moratoria.**

A plaintiff's standing to bring the claims raised is "a necessary predicate to any exercise

of [a court's] jurisdiction." *Delta Air Lines, Inc. v. Export-Import Bank*, 85 F. Supp. 3d 250, 260

(D.D.C. 2015) (internal quotation marks omitted).   "A plaintiff has standing only if he can

'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely

to be redressed by the requested relief.'"   *California v. Texas*, 141 S. Ct. 2104, 2113 (2021)

(quoting *DaimlerChrysler Corp. v Cuno*, 547 U.S. 332, 342 (2006)).   Standing must exist for

each claim being raised and for each form of relief sought.   *Davis v. FEC*, 554 U.S. 724, 734

(2008).

Here, Plaintiff lacks standing to bring any of the claims alleged because the challenged

laws did not cause him any injury.   With respect to Plaintiff's (apparently) leased tenants,

Plaintiff does not allege the challenged moratoria caused any concrete injury connected to his

"direct" or "beneficial" interests in those properties.   *See* Section I *supra* (cataloguing limited

allegations concerning leased tenants); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)

(affirming requirement that injury alleged be "concrete," as in "it must actually exist").   There

are no compensatory damages alleged.   *See* SAC at 16; *see generally* SAC.   The District is not

aware of any authorities holding that mental anguish alone, *see* SAC at 18–19, creates standing;

and, in any event, Plaintiff's claim on that point is based on the mental anguish of *other persons*,

*id.* and plainly not cognizable.   *California*, 141 S. Ct. at 2113 (requiring "personal injury").

Further, there is nothing suggesting "ongoing or imminent injury," such that a declaratory

judgment might issue, *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 40 (D.C. Cir. 2015),

particularly since the challenged laws ceased to be in effect more than a year and half before the

SAC was filed.   Order [18] at 4.   Finally, a claim for nominal damages does not itself confer

standing; there must still be a concrete injury alleged.   *See Uzuegbunam v. Preczewski*, 141 S.

Ct. 792, 797 (2021) (holding that "a plaintiff who sues over a *completed injury*" can establish standing "by requesting only nominal damages").

With respect to the Foreclosed Unit, for the same reason as above, Plaintiff lacks standing to seek any declaratory relief because the programs challenged have long since ended.  And, although Plaintiff does allege concrete injury in the form of compensatory damages in connection with this property, he nonetheless lacks standing to purse them because the challenged laws did not cause this injury.  *California*, 141 S. Ct. at 2113 (requiring injury be "fairly traceable to defendant's allegedly unlawful conduct").  Plaintiff's concerns flow from his belief that the prior owner, Andre Hopkins, could not be promptly evicted after the foreclosure sale because of the moratoria.  *See generally* SAC; Order of March 1, 2023, [34] at 2 ("Because of these laws, Gallo [believes he] could not evict a squatter from one of his condos.").  But this belief is mistaken.  Plaintiff could have evicted Mr. Hopkins at any time.

Per its plain text, the Filing Moratorium did not prohibit all manners of eviction under District law—just one, the filing of actions under D.C. Code § 16-1501:

Sec. 10. Eviction clarification

*Section 16-1501* of the District of Columbia Official Code is amended as follows:

(a) The existing text is designated as subsection (a).

(b) A new subsection (b) is added to read as follows:

"(b) During a period of time for which the Mayor has declared a public health emergency pursuant to section 5a of the District of Columbia Public Emergency Act of 1980, effective October 17, 2002 (D.C. Law 14-194; D.C. Official Code 7-2304.01), and for 60 days thereafter, the person aggrieved shall not file a complaint seeking relief *pursuant to this section*."

Coronavirus Omnibus Emergency Amendment Act of 2020, D.C. Act 23-317 § 10 (May 13, 2020) (emphasis added); *Towers*, 260 A.3d at 692 (explaining the act "prohibited landlords from

filing actions for possession of real property pursuant to D.C. Code § 16-1501 (2012 Repl.) …").
D.C. Code § 16-1501 provides a cause of action enabling *summary* disposition of possessory
disputes.  *See Pernell v. Southall Realty*, 416 U.S. 363, 372, 375–76 (1974) (discussing § 16-
1501, as a mechanism for "summary relief in those cases where … the action of ejectment would
lie") (quoting treatise) (emphasis added).

But § 16-1501 is not the only cause of action for possessory disputes under District law;
ejectment actions are also separately viable.  D.C. Code § 16-1101, *et seq.*, titled "Ejectment,"
permits a plaintiff-property owner to obtain possession if he or she can show title and prove that
the defendant is "in possession of the premises[ ] and [ ] holding adversely to the plaintiff."  D.C.
Code §§ 16-1104, 1111, 1114; *Hernandez v. Banks*, 84 A.3d 543, 553, 546–47 (D.C. 2014)
(stating elements); *Nicholas v. Howard*, 459 A.2d 1039, 1041 (D.C. 1983) (holding that damages
for anything other than "rent" could *not* be obtained "by summary proceeding in the Landlord
and Tenant Branch," but could be obtained through a "traditional civil action in ejectment,
brought in the regular Civil Division of Super Court pursuant to D.C. Code § 16-1101 *et seq.*").
There is no reason to believe the Filing Moratorium also prohibited ejectment actions under
§ 16-1101 *et seq.  See* D.C. Act 23-317 § 10.

Separate provisions of a different law—which Plaintiff has not put at issue in the Second
Amended Complaint—*did* operate to prevent the eviction of certain "tenants," as defined by
District law, by any means.  As amended by the Council in 2020, the Rental Housing Act
prohibited landlords from serving notices on tenants to vacate a property and from executing any
evictions (with a few exceptions not relevant here).  *See* COVID-19 Response Emergency
Amendment Act of 2020, D.C. Act 23-247, § 308 (Mar. 17, 2020), *codified at* D.C. Code §§ 42-
3505.01(k)(3) (eviction moratorium), (k-1) (exceptions); Eviction Notice Moratorium

Emergency Amendment Act of 2020, D.C. Act 23-415, § 2 (signed Oct. 14, 2020), *codified at* D.C. Code § 42-3505.01(q).

But Mr. Hopkins was not a "tenant" protected by the Rental Housing Act (RHA).  As alleged, Mr. Hopkins was a homeowner, whose home was sold at a foreclosure sale, and who held over after the sale.  SAC ¶¶ 4, 8, 43; Ex. B to Motion at 4.  He never occupied the property under a lease or paid any rent to Plaintiff.  *Id.*  The D.C. Court of Appeals has squarely held and repeatedly affirmed that foreclosed homeowners holding over, like Mr. Hopkins, are not "tenants" within the meaning of the RHA, and they are not protected by its provisions.  *See*, *e.g.*, *Crockett v. Deutsche Bank Nat'l Trust*, 16 A.3d 949, n.3 (D.C. 2011) ("[T]he situation of a mortgagor who holds over after foreclosure should be distinguished from that of a tenant of the mortgagor who holds over after foreclosure, as the latter may be entitled to a number of statutory protections under the [RHA].");  *Adm'r of Veterans Affs. v. Valentine*, 490 A.2d 1165, 1166 (D.C. 1985) ("In *Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212 (D.C. 1978) (*per curiam*), we held that District of Columbia statutory eviction restrictions did not protect a property owner who defaulted on a mortgage (deed of trust) and continued to live in his former home after it was sold at foreclosure.");  *Anderson v. William J. Davis, Inc.*, 553 A.2d 648, 650 (D.C. 1989) (explaining that RHA "tenants" are entitled to occupy "rental unit[s]," which are housing accommodations "rented or offered for rent … ");  *Hernandez*, 84 A.3d at 543–44 (explaining that "the defendant in *Anderson* never paid rent to the plaintiff for use of the apartment and was accordingly never found to be a legal tenant with rights under the" RHA);  *Surrat v. Real Estate Exch.*, 76 A.2d 587, 588 (D.C. 1950).  The temporary eviction and notice prohibitions contained in the RHA thus never applied to Mr. Hopkins.

14

Finally, for similar definitional reasons, Plaintiff was not harmed by the Debt Collection Moratorium.  By its plain terms, that law applies only to actions filed "for the purpose of collecting any debt or other past due balance owed or alleged to be owed."  COVID-19 Response Supplemental Emergency Amendment Act of 2020, D.C. Act 23-286, § 207 (a)(1)(IB) (Apr. 10, 2020).  "Debt" means "money … which is, or is alleged to be, more than 30 days past due and owing … under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family, or household purposes or as a result of a loan" for the same.  *Id*. at (1C).  Plaintiff does not allege that he was owed any "debt" that he was prevented from collecting, such as past due rent.  *See generally* SAC.  Plaintiff alleges he is owed damages for the fair use and occupancy value of the Foreclosed Unit, *id.* ¶ 47 and p. 26, but that is not a debt, *i.e.*, it is not a sum of money owed to Plaintiff by a date certain and "more than 30 days past due and owing."[2]  *Cf. Nicholas*, 459 A.2d at 1041 ("[A]lthough appellees may be liable … for the use and enjoyment of appellants' townhouse, those damages are not 'rent'" … .").  And, though he does allege he is owed a debt as a result of a money judgment against Mr. Hopkins, he does not allege the Debt Collection Moratorium prevents collection.  SAC ¶ 37.

---

[2]     Indeed, if Plaintiff (or Gallo Holdings) had filed an action for ejectment, Plaintiff could have pursued damages for the fair use and occupancy value of the Foreclosed Unit, from the date he obtained an interest in the property through the date of the verdict on any damages, in the same action.  *Hernandez*, 84 A.3d at 556–57 (citing D.C. Code § 16-1109(a)(2)).  Or Plaintiff could have done so as a separate action under D.C. Code § 16-1111.  *Nicholas*, 459 A.2d at 1041.  But he could *not* have obtained such damages if he had only filed an action for summary eviction in the Landlord & Tenant Branch, as Gallo Holdings tried to do, and as Plaintiff seems to have wanted to do.  *See* Ex. B to Motion at 4; *Nicholas*, 459 A.2d at 1041.  This is yet another reason Plaintiff was not harmed by the Filing Moratorium.

For all of these reasons, Plaintiff's alleged harms are not traceable to the District, and

Plaintiff therefore lacks standing to pursue his claims.  Plaintiff's Second Amended Complaint

should be dismissed, with prejudice.  *See* [34] at 9.

**III.    Plaintiff's Claims Should Be Dismissed Because the Moratoria Did Not Cause Him Harm as Required To Prove Constitutional Claims Under Section 1983.**

Plaintiff brings all of his claims under 42 U.S.C. § 1983.  SAC at 1.  To make out a claim

under § 1983, Plaintiff must show that a person acting under color of state law caused a violation

of a right secured by the Constitution.  *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48

(1988).  Further, to make out a claim against the District, Plaintiff must show that some District

policy or practice was the moving force behind his injuries.  *Monell v. Dep't of Soc. Servs. of*

*City of New York*, 436 U.S. 658, 694 (1978); *Smith v. District of Columbia*, 413 F.3d 86, 102–03

(D.C. Cir. 2005).  For the reasons stated above, Plaintiff has not plausibly alleged that any action

by the District caused him harm.  The Amended Complaint should thus be dismissed with

prejudice for this reason as well.

**IV.    Plaintiff Fails To State a Claim for Violation of the Contracts Clause.**

If the Court finds that the challenged moratoria did somehow prevent Plaintiff from

evicting Mr. Hopkins from the Foreclosed Unit and thereby caused Plaintiff harm, or that

Plaintiff has standing to seek some relief in connection with other properties, the Court should

still dismiss Plaintiff's claims for failure to state a constitutional violation.  *West*, 487 U.S. at 48.

This Court has already explained the test for a Contracts Clause violation in its opinion

dismissing Plaintiff's initial Complaint:

> The Contracts Clause provides that '[n]o state shall . . . pass any . . . Law impairing
> the Obligation of Contracts.'  U.S. Const., Art. I, § 10, cl. 1.  The Clause 'applies to
> any kind of contract' but 'not all laws affecting pre-existing contracts violate the
> Clause.'  *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018).  Courts use a two-step test
> to determine whether a law implicates the Contracts Clause.  First, courts look to
> 'whether the state law has operated as a substantial impairment of a contractual

relationship.' *Id.* at 1821–22 (2018) (cleaned up).  If a substantial impairment exists, then courts examine 'whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose.' *Id.* at 1822 (cleaned up).

[18] at 10.

With respect to the Foreclosed Unit, Plaintiff's claim falters at the first step:  He fails to state a claim for violation of the Contracts Clause because he does not allege the existence of a contract.  The D.C. Court of Appeals has made clear that a "landlord-tenant relationship does not arise by mere occupancy of the premises absent an express or implied contractual agreement, with both privity of estate and privity of contract . . . ."  *Hernandez*, 84 A.3d at 553 (quoting *Nicholas*, 459 A.2d at 1040).  And mere occupancy does not create an implied contract.  *Nicholas*, 459 A.2d at 1039–40 (holding "there was no contractual landlord-tenant relationship" that obligated payment of rent when holdover tenants of foreclosed mortgagor could not agree with new owner on lease terms).  Here, there was no lease for the Foreclosed Unit, nor any alleged agreement between Plaintiff and Mr. Hopkins.  SAC ¶¶ 4, 8, 9.  Thus, Plaintiff fails to allege a contract and, logically, cannot state a claim for a violation of the Contracts Clause, with respect to the Filing or Debt Collection moratoria.  *Sveen*, 138 S. Ct. at 1821–22.

Additionally, even if Plaintiff had alleged an implied contract, his claim should be dismissed because he does not allege a substantial impairment of that contract.  In determining whether a "substantial impairment" exists, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from reinstating his rights."  *Id*. at 1822; *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978); *El Paso v. Simmons*, 379 U.S. 497, 506-07 (1965); *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982).  According to sworn documents Plaintiff filed in the public record, he did not obtain the property interest at issue here until June 2021—that is *more*

*than a year* after the moratoria were first in place.  Laws that were in force when a contract is created, such as the Filing and Debt Collection moratoria at issue here, cannot be said to interfere with a party's reasonable expectations, or undermine the contractual bargain, because they are a part of the contractual bargain.  *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435 (1934) ("[E]xisting laws [are] read into contracts in order to fix obligations as between parties . . . .").

Finally, even if Plaintiff could somehow be said to represent the interests and "reasonable expectations" of Gallo Holdings here (which he does not), and even if there were a contract alleged (there is not), this claim should be dismissed for the reasons stated in the Court's opinion of June 21, 2022.  [18] at 10–15.  It is still true that "the Filing Moratorium [did] not substantially impair Gallo's rights under the Contracts Clause" because it did not extinguish his rights to payment, but merely delayed them.  *Id.*  The same is true for the Debt Collection Moratorium.  And while it may be true that the judgment owed by Mr. Hopkins to Plaintiff is "non-collectible," SAC ¶ 37, nothing in the SAC suggests that it is "non-collectible" because of any District custom or policy, *id.*  To the contrary, the SAC suggests that Mr. Hopkins simply lacked funds to pay.  *Cf.* ¶ 4.  This fact should not, therefore, affect the Court's prior Contracts Clause analysis or holding.

Similarly, nothing in the Second Amended Complaint should change the Court's Contracts analysis with respect to any of Plaintiff's other properties.  Plaintiff appears to have been fully compensated for any delayed payments in connection with those properties; he does not allege otherwise.  Nothing in the SAC requires any new analysis of these allegations.

## V.      Plaintiff Fails To State a Claim for Violation of the Takings Clause.

### A.      Plaintiff Does Not Allege a Physical Taking.

As previously explained by the Court, a "taking may be either a physical or regulatory taking."  [18] at 16.  "A physical taking occurs when there is 'a direct government appropriation

or physical invasion of private property.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S.

528, 537 (2005)).  The Supreme Court has repeatedly found physical takings when government

action introduces and coerces physical invasion of real property without just compensation.  *E.g.*,

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2074 (2021) (regulation authorizing union

organizers to enter into and remain on farm property for three hours per day); *Loretto v.*

*Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 423 (1982) ("law requiring landlords to

allow cable companies to install equipment on their properties");[3] *Kaiser Aetna v. United States*,

444 U.S. 164, 167, 180 (1979) (holding "imposition of navigational servitude … result[s] in an

actual physical invasion of [a] privately owned marina").

      When, however, the occupation has been privately invited or permitted—in other words,

when the initial entry was lawful—and the government action merely changes the terms of

subsequent occupancy, there is no coerced "invasion," and no physical taking.  *E.g.*, *Yee v. City*

*of Escondido*, 503 U.S. 519 (1992) (holding no physical taking occurred when there was no

"physical invasion" because mobile park tenants had been previously "invited by" the park

owners); *Cedar Point*, 141 S. Ct. at 2076–77 (distinguishing instant case from *PruneYard*

*Shopping Center v. Robbins*, 447 U.S. 74 (1980) "as involving 'an already publicly accessible

business,'" and regulation of that relationship, not a newly permitted physical invasion); *FCC v.*

*Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("[I]t is the invitation … that makes the

difference."); *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1028 (1992) (explaining a

"permanent physical occupation" becomes a taking if the government "decree[s] it anew

---

[3]     This is *Loretto*'s holding as described by *Cedar Point*, 141 S. Ct. at 2073.

(without compensation)"); *Loretto*, 458 U.S. at 436 ("[A]n owner suffers a special kind of injury

when a *stranger* directly invades and occupies the owner's property.") (emphasis in original).[4]

Here, there was no physical taking as a result of the Filing Moratorium because there was

no government-created invasion.  *Id*.  Even though it is true that Plaintiff did not himself invite

Mr. Hopkins to occupy his property, Mr. Hopkins nonetheless entered the property lawfully, as

its owner; he did not enter by the force of government action.  SAC ¶¶ 4, 8.  And, although

Plaintiff clearly did not welcome Mr. Hopkins' presence, he knew, for a fact, that Mr. Hopkins

was still living there when he obtained an interest in the Foreclosed Unit from Gallo Holdings in

June 2021.  *Id*. ¶¶ 22, 49; Ex. A to Motion at 19–22.  Further, nothing in the SAC indicates that

Mr. Gallo did *not* invite tenants into the other units mentioned in the SAC.  Accordingly, this

case is more like *Yee* and *PruneYard* than *Cedar Point*, and the Court should find that no

physical taking occurred.  *See supra*; [18] at 16–20.

Additionally, as this Court also held in June 2022, "physical takings occur [only] when

the owner 'can make no nonpossessory use of the property.'"  *Id*. at 20 (quoting *Loretto*, 458

U.S. at 435–36).  Here, that is not the case because Plaintiff could, and *did*, pursue compensation

for the fair use and occupancy value of the Foreclosed Unit.  In June 2021, after obtaining his

interest in the Foreclosed Unit, Plaintiff filed a pro se claim in small claims court against Andre

Hopkins for $10,000 for the "fair-market value" of his "8 months of occupancy … through the

end of 2020."  *See* Ex. C, *Gallo v. Hopkins*, Case No. 2021 SC3 000523, Statement of Claim

(D.C. Sup. Ct. filed June 11, 2021) at 6.  Plaintiff obtained a judgment for the full amount of that

---

[4]     For centuries, property law has also made distinctions between the rights of persons who
initially entered lawfully and those who entered unlawfully.  *E.g.*, *Pernell*, 416 U.S. at 372
(distinguishing 12th century writs of novel disseisin and writs of entry).  The Takings Clause
incorporates traditional understandings of property rights such as this.  *Lucas*, 505 U.S. at 1030.

claim in November 2021.  Ex. D, Judgment.  Plaintiff also alleges that he has "obtained a money

judgment against Hopkins for the rapidly accruing damages ($20,000 by late 2021)," suggesting

he may have obtained further relief. [5]  SAC ¶ 37.  Further, nothing in the SAC suggests that

Plaintiff is owed any money in connection with other units; presumably he received rent for

those units and thus made use of the properties.  Thus, there is no physical taking.  [18] at 20.

In sum, the SAC does not allege any physical taking resulting from the Debt Collection

Moratorium.  That law merely delayed the filing of debt collection actions, *see* Order [18] at 3; it

did not cause any physical invasion of Plaintiff's property.

### B. Plaintiff Does Not Allege a Regulatory Taking.

The Court has also already explained the test for regulatory takings:

> In evaluating these takings, the Court relies on the framework from *Penn Central
> Transportation Company v. New York City*, 438 U.S. 104 (1978).  *See* [*Tahoe-
> Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326–27
> (2002)].  *Penn Central*'s inquiry has three parts:  the regulation's economic effect
> on the claimant, the effect on investment-backed expectations, and the character of
> the government action.  *Dist. Intown Properties Ltd. P'ship v. Dist. of Colum.*, 198
> F.3d 874, 883 (D.C. Cir. 1999).

[18] at 20.  "Gallo must put forth 'striking evidence of economic effects to prevail,'" and

show more than that he has "'been denied the ability to exploit a property interest' in the

particular way he desires."  *Id*. at 21 (quoting *Dist. Intown*, 198 F.3d at 883, 879).

Here, Plaintiff has not suffered a regulatory taking because he has failed to plausibly

allege "striking evidence of economic effects."  With respect to the non-foreclosed units, the

SAC does not allege that Plaintiff did not, could not, benefit from relief provided by the District,

including StayDC.  *See* Order [18] at 20–21; SAC.  With respect to the Foreclosed Unit, it is true

---

[5]     It is unclear how Mr. Gallo obtained a judgment for this amount despite owning only 1%
of the Foreclosed Unit.

that Plaintiff could not use the "avenues" for relief cited as relevant in the Court's first Order of

dismissal, namely, the Payment Plan Program.  *See* Order [18] at 21–22.  That program only

applied to "eligible tenants," and "eligible tenant" means one who, among other requirements,

"has leased from a provider" a residential or commercial property.  Coronavirus Support

Temporary Amendment Act of 2021, D.C. Act 24-62, § 402(a), (h).  Mr. Hopkins was not an

"eligible tenant"—he never leased the Foreclosed Unit, from Plaintiff or anyone else—and none

of the provisions of the Payment Plan Program applied to him.  *Id*.; SAC ¶¶ 4, 8.  Nonetheless,

the SAC still fails to allege striking evidence of economic effects.

Plaintiff alleges significant losses for the fair use and occupancy value of the property,

but he has already obtained a money judgment for part of this loss.  SAC at 16, ¶ 37.  Plaintiff

has not explained why he could not pursue compensation for the remainder of this alleged loss,

or for other damages resulting from Mr. Hopkins' occupancy, by the same means.  Plaintiff

alleges that this debt is "non-collectible," *id*. ¶ 37 but he does not explain why or offer any other

supporting facts from which an explanation could be inferred.  Again, perhaps Mr. Hopkins

simply doesn't have the money to pay.  *Cf*. ¶ 4.  But that may change in the future.  And, in any

event, the alleged non-collectibility of this sum is not the fault *of the District*, as a result of the

challenged laws or any government action.  Thus, even if the debt is non-collectible, there is no §

1983 claim.  *West*, 487 U.S. at 48 (government actor must cause violation); *Monell*, 436 U.S. at

694 (government custom or policy must be the "moving force" of violation).

Additionally, Plaintiff has not alleged any interference with reasonable investment-

backed expectations.  With respect to the non-foreclosed units, the Court's prior analysis full

applies.  *See* Order [18] at 21-22.  With respect to the Foreclosed Unit, Plaintiff's case is even

weaker.  Again, Plaintiff acquired his interest in this property when the Filing and Debt

Collection moratoria *were already law*, when Mr. Hopkins had been occupying it for more than a year past the date of the foreclosure, and knowing that Mr. Hopkins had been unable (for whatever reason) to keep up with payments owed on his mortgage.  *See* SAC ¶¶ 4, 8; Ex. A to Motion at 19–22.  And Plaintiff acquired his interest for free.  Ex. A to Motion at 19 (granting interest "in consideration of the sum of NO CONSIDERATION AND 00/100 DOLLARS ($00.00)").  Having acquired his interest within this factual and regulatory landscape, Plaintiff could not reasonably have expected to turn much of a profit on it, if any, in the short term.

Finally, as previously discussed by the Court, the character of the government action at issue here is similar to other legislation upheld by the Supreme Court and D.C. Circuit against takings challenges.  Order [18] at 22.

For all of these reasons, Plaintiff has failed to state a claim for violation of the Takings Clause.

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Date:  August 25, 2023.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

MATTHEW R. BLECHER
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Mateya B. Kelley*

23

MATEYA B. KELLEY [888219451]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-5824
mateya.kelley@dc.gov

*Counsel for Defendant*