UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexander Gallo
*Plaintiff*

v.                                               **Case 1:21-cv-03298-TNM**
                                                 **Judge Trevor N. McFadden**

District of Columbia
*Defendant*

### Plaintiff's Opposition to District's Motion to Dismiss the Second Amended Complaint

*Introduction*

  Three months ago, in Document 46, the District "sincerely apologized" for making a false assertion in Document 42: "Plaintiff could have evicted Mr. Hopkins at any time." Now that's back on page 12 of the new Motion to Dismiss. Either the District can't keep track of its lies or it repeats them hoping I miss one anew and the court then has an opening to gaslight this case out of existence as "conceded."  Sorry- not happening. The instant case was filed nearly 2 years ago- 1.5 years into the related case which ended with punts. 3 years, 7 judges and hundreds of docket entries later, we are still on a motion to dismiss with a defendant pretending to not understand the same claim. On the merits, the District *again* ignores the distinctly-plead claims on appropriations and confiscation which are not "vague" and are shortly and plainly stated with citation to controlling precedent.

  I.  Rule 8

  The first complaint was 10 pages- "terse." It was amended to 30 pages- not "short." It was made 20 pages so that like Goldilocks' Porridge it is just right. Content-wise, nothing is lacking. Similar complaints (*El Papel* and *Farhoud*, for example) contain brief statements that Plaintiffs own some properties- nothing more. Farhoud owns a thousand units- that complaint was not a thousand pages of accounting print outs or lists of breaches- it's 19 pages. This complaint contains more specificity and detailed tidy pleading of the property interests taken and imminently threatened. "Background" was removed, *facts* were added, and notations on the claims were added- as requested.

  II.  Standing

  Over 2 years ago, the DC Court of Appeals affirmed my standing as Plaintiff to litigate this case. I appeared in the trial court two times more to receive possession and money judgments. This court is not


8/28/2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

free to unwind standing determinations made by state courts applying state law. The fact that I own multiple leased condos personally precludes any new "standing" tangents on the facial claims in Section I and III. *Realized* mental anguish (Section V) is personal injury. As a deed holder on the Foreclosure Unit, entitled to possession thereby, there is no "standing" problem. My prior Opposition extensively briefed the matter- see Appendix 1, reincorporated here, as the District ignored it all and simply repeats those arguments despite conflict with the cited precedent.

On the Foreclosure Unit, besides the (1) direct ownership (2) personal liability from February 2020 giving third party standing and (3) controlling precedent affirming successorship to full Takings Clause rights, a fourth doctrine distinctly provides personal standing from the date of purchase in 2020: the doctrine of purchase money resulting trust. I stated in my prior Opposition that I *personally* went to the auction house and *personally* put down the purchase money at the podium. The District ignores that too against controlling precedent. *Smithsonian Institution v. Meech*, 169 U.S. 398 (1898) ("where upon a purchase of property the conveyance of the legal title is to one person while the consideration is paid by another, an implied or resulting trust immediately arises, and the grantee in the conveyance will be held as trustee for the party from whom the consideration proceeds"). I am thus the owner for constitutional purposes regardless of formal title, but the deed alone suffices to avoid going here.

With respect to the leased units- in which lessees defaulted- the District argues: "Plaintiff does not allege the challenged moratoria caused any concrete injury…there are no compensatory damages alleged" Motion at 11.[1] Again, nonsense: damage is the mental anguish of getting robbed and dispossessed with zero recourse. Controlling state law presumes such damages from wrongful dispossession even *without* the robbery. See *Higgins v. Dail*, 61 A.2d 38 (D.C. 1948) ("the law presumes some damages followed from this invasion of appellant's right" and "recover for mental suffering, inconvenience and discomfort"). The takings clause violation in the leased units is precisely the *consummated* taking found in *Knick v. Township of Scott*, for which nominal damages suffice for standing: paying the loot back after robbing the bank. Finally, "The District is not aware of any authorities holding that mental anguish alone…creates standing" (Motion, at 11). The Supreme Court has held that a suit under 1983 for violation of the takings clause is not merely a claim for just compensation but rather a suit for "recovery of damages for personal injuries." *Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999). Claim V is a claim for *personal injury* and the District's motion conflicts with controlling precedent.

---

[1] Similarly, "Plaintiff does not allege any compensatory damage claims in connection with these properties" Motion, Introduction.

*"Mistaken Belief" Around "Ejectment" Returns*

"Plaintiff could have evicted Mr. Hopkins at any time." *Motion* at 12 (inserting "[believes he]" into the Court's March 1, 2023 order and re-introducing the pages of argument concerning "ejectment" suits which appeared in the prior Motion to Dismiss (ECF 42)). In my prior Opposition to that motion, I quoted at length the Superior Court's holding that such suits were *disallowed*. Opposition, 2-3. The District filed a Reply stating: "Counsel for the District got that wrong…Judge Epstein's ruling, however, does not change the analysis put forth in the District's Motion… local trial court opinions do not bind this Court's interpretation of District law… Judge Epstein's ruling should hold little persuasive weight" Reply, 1-2 (Document ECF 46). I then filed a motion for leave to file a sur-reply, stating that Epstein's ruling was *binding in Superior Court*, reality itself is not accorded merely "persuasive weight," and whether correct or not (it was correct) a taking by *The District* occurred. I equally noted the Small Claims Branch stayed the money action until after the moratorium. On the assumption the District will again apologize for re-introducing pages 12-15 of this Motion and not repeat the further arguments warranting a sur-reply (proactively reincorporated as Appendix 2 here), nothing further is needed.[2]

   III.   The Moratoria Caused the Harm

The statute of the municipality caused the harm. The statute granted people a right to squat for free and provides no compensation by the government for the people it allows to squat for free.

   IV.   Contracts Clause

The Contracts Clause claim in the complaint seeks nominal damages, mental anguish and declaratory judgment for impairment of all of Plaintiff's leases- on the ground that the *obligation* of all of Plaintiff's leases was "suspended" while Plaintiff's obligation to perform his half of the lease was not. It is no different than the merits claims brought in other district courts.

"Plaintiff appears to have been fully compensated for any delayed payments in connection with those properties; he does not allege otherwise." Motion to Dismiss, at 18. The allegation is: just like in *Knick*, someone redeeming after riding out an unconstitutional statute does not *negate* the violation. The implied contract is not paid back. Nominal damages and mental anguish are sought for consummated impairment in all cases- where payment defaults occurred and no remedy was available except crossing fingers and *hoping* delinquent compensation arrives after the suspension. Hoping is not the constitutional

---

[2] The District removed this case from Superior Court- where ejectment suits were *explicitly disallowed* and where a judge would presumably find this argument sanctionable- and now moves *this* court to declare that the Superior Court *allowed* precisely what it *disallowed*, all as a tee-hee gaslighting exercise to stiff someone out of compensation under the 5th Amendment.

standard under *Blaisdell* and *Worthen*. The standard is enforceable obligation. When obligations are "suspended" without the government compensating the violation is complete. Instalment laws which kick all payments far into the future are facial violations. Cases are cited in the complaint to substantiate the *stating of the claim* and demonstrate that precisely such statutes have already been held violations:

- *Barnitz v. Beverly*, 163 U.S. 118 (1896) ("the act carves out…an estate of several months more than was obtainable by him under the former law, with full right of possession, and without paying rent or accounting for profits in the meantime.").
- *W.B. Worthen v Kavanaugh*, 295 U.S. 56 (1935) ("no enforceable obligation in the meantime" and debtors having "every incentive to refuse to pay a dollar").

Ignoring Hopkins, two lessees defaulted on payment and the Filing Ban *carved out estates* in which those defaulted lessees were given statutory *right of possession* despite the lease clause to the contrary. All of plaintiff's leases were made unenforceable. A third breach is equally relevant constitutionally.

*Behavioral Breaches*

While the crux of the contracts clause claim is suspension of payment obligations (realized and threatened), one of Plaintiff's lessees (in a studio he owns personally) breached in behavioral ways.[3] In February 2020, the HOA informed Plaintiff that a lessee was violating building rules and requested he *enforce* the lease. Various complaints included unauthorized guests, animals, smoking on the premises, repeated lock-outs requiring maintenance to give him new keys at late hours, and finally on March 14, 2020, complaints from the HOA that the lessee had defecated in the shared laundry machine and "Any special cleaning and services will accordingly be billed to you .. we are happy to help in anyway we can, but we are not the landlord nor social services .... and we cannot tolerate this kind of public health hazard." Days later, the District announced: all evictions for lease violations are banned and no compensation is offered to reimburse for *whatever the damage is* caused by the breach. Plaintiff would henceforth be forced to house someone in continual material breach of lease with no enforcement mechanism- hence more mental anguish on top of the already-occurring theft in the Foreclosure Unit across town. On June 1, 2020, the HOA complained: "He is now having a drinking problem and today he passed out in the hallway, covered in urine, and building staff and another resident had to help him up and escort him… Rendering such assistance to get him out of the hallway means people needed to hold him and this is something they shouldn't have to risk given the COVID situation."[4] On August 22, 2020:

---

[3] This was stated factually before, without a needless tangent: "My other lessees in breach? I couldn't sue them either and the District does not refute that." Opposition to Motion to Dismiss Amended Complaint.
[4] Remember: this was allegedly meant to "stop the spread"…

4

complaints of the lessee locking himself out again repeatedly overnight. Again- no recourse. On October 21, 2020, the HOA again complained of lease violations due to an unauthorized guest who "doesn't appear stable herself ... roams common areas without mask .. smokes on front steps .. accused other residents of…" On October 28, 2020, the HOA complained of further breaches: "his guest's actions and lack of adherence to our Coop rules jeopardizes his lease"- Plaintiff reminded the HOA that the District had suspended lease enforcement and everyone must simply suffer the consequences without relief. On November 3, 2020, the HOA again complained: "the risk & jeopardy of other residents .. it's not so much an eviction, it's that he NEEDS assisted care and should be transferred to as assisted living facility"- the next day, the HOA again pleaded with Plaintiff: "We need the incidents to stop ... he has shown difficulty living in the building independently ... in our observations, an aide wouldn't be sufficient ... in his current condition he can not live in the building... several residents expressed fear and anger over yesterday's incident and their increasing observations of his erratic and unstable behaviors.. We need your and their cooperation in acting on this as soon as possible before something more deadly occurs"

Zero recourse: third parties plead for me to "do something" while the District precluded the _doing_ of anything. The breach occurred and the District carved out an estate against the terms of the lease- thus impairing the lease. The violation here was affirmed in *Heights Apartments, LLC v. Walz*, No. 21-1278 (8th Cir. Apr. 5, 2022) ("The same is true if other terms of the lease cannot be enforced… Although these and other alleged violations of the leases (even those unrelated to non-payment of rent) were sufficient to constitute a breach and warranted eviction…those remedies were unavailable because of the EOs").

V.  Takings Clause
    a. Physical Taking

The District again limits its motion to one argument: if the "initial" entry is not breaking and entering, any taking is precluded. It argues no "government-created invasion" while sidestepping the other half of the doctrine: *appropriation* of a *property interest*. The District's motion thus does not even address the claims. None of the claims concern the "initial" entries from years earlier.

The complaint states an appropriation of the reversionary interest- the District ignores it, again. It states in the alternative an appropriation of the leased fee interest- ignored again. It states an appropriation (eg, "confiscation") of income- ignored again. It states an appropriation of contracts- ignored again. It states trespass- ignored again. What is not argued cannot be opposed, so this Opposition is limited. But the District's Motion still inadvertently reveals the fundamental flaw, the conflict with precedent, and conflict with the District's prior argument a century ago: "there is no coerced 'invasion,' and no physical taking" *Motion*, at 19. Oh really- no *coercion…*?

The District argued to the Supreme Court in *Block*: "It is immaterial whether such statutes are deemed to rest on the right of eminent domain (113 U.S. 19), or upon the power to regulate use even to the extent of *coercing it upon fair compensation* where the public interest so requires." *Block v. Hirsh*, 256 U.S. 135 (1921) (argument of District, emphasis added). Judicial estoppel is warranted.[5] The District's concession under the Takings Clause was that the precise construct is irrelevant because both are *compensated takings*. The District now switches to: no coercion and compensation be damned. This leads to the next issue, which has every court hung up: *Yee*. If the owner's "invitation" was still alive in *Block*, why was eminent domain or coercion necessary (eg, conceded)? Rhetorical question…

*Yee, Existing Voluntary Relationships, and Compelled Occupancy*

Seeking reconsideration, I distinguished invited estates from trespass, stated recent district court rulings rest on hoodwinks and: "there is no *relationship*." Reply, at 4. This court considered this "novel" and described *Yee* as: "the law at issue there allowed eviction for nonpayment of rent. See MFR at 7. True, but that was not central to the Court's holding. Instead, *Yee* rested in large part on the voluntariness of the owner/renter relationship." *Order granting Reconsideration*, at 5. Note the assumption- one very "central" still unanswered: what relationship remains here? The landlord and tenant in *Yee* were in an unterminated relationship- there was no breach or termination, merely a landlord's displeasure with *prices* which capped his profit margin to a "reasonable" level. This case concerns people who *were* but *do not remain* in any relationship[6] because it is terminated.

My novel theory is not as novel as it seems. The New York Court of Appeals- where such laws were initially litigated- held repeatedly that eviction moratoriums do not regulate relationships but rather impose compulsion after relationships end. Such holdings have been buried. Take for example a World War I law which protected only <u>*paying* lessees</u> from agreements to vacate after their "invitation" expired and the owner *did not consent*[7] to renewal. *Stern v. Equitable Trust Co.*, 144 N.E. 578 (N.Y. 1924): "the

---

[5] The persuasiveness of the concession is supported by the regard given to the person who made it. Plaintiff unearthed the obituary of Mr. Henry M. Glassie. "He was widely known for his part in land cases involving the District...Chief Justice Wheat described Mr. Glassie as a 'thorough, sound lawyer and a brilliant advocate. He was a man of outstanding ability. Few, if any, lawyers could surpass him.'" *The Evening Star*, Washington, DC. Thursday, January 27, 1938. Plaintiff is pleased to rest his novel theory on such a reputable foundation.

[6] The Supreme Court in *Yee* affirmed the California Court of Appeals' holding that its mobilehome law did not entail compelled occupancy- it merely required *assignment of existing leases* from a tenant selling a vehicle on leased land to a new buyer- eg, assignment of the land lease. "a park owner is compelled to accept as a new tenant a person who purchases a mobilehome from an existing tenant." *Yee v. City of Escondido*, 224 Cal.App.3d 1349 (Cal. Ct. App. 1990) (using the phrase "existing tenant" or "existing lease" nine times).

[7] Such agreements (which have nothing to do with this case) still exist and landlords frequently consent to renewals regardless. Who says no to repeat customers? A hundred years ago, before statutes defined "just cause" and before price controls, the owner would decline renewal for underlying reasons such as desiring to occupy himself, to renovate, or a dispute over price of the renewal. "Rent Control" merely puts both parties on notice as to what permissible renewal pricing is.

6

relation of landlord and tenant does not exist…the tenant thus remains in possession, not by virtue of any agreement, express or implied, either as to duration of term or amount of rent, but by virtue of the ***compulsion*** which the law exerts on the landlord to allow him to remain…the tenant does not offer to remain in possession of the premises. He insists on doing so. The landlord does not accept his proposition. The law ***forces*** it upon him." *Id* (emphasis added and reaffirmed twice).[8]

Fast-forward a century, now with theft and squatting after breach: "not forced upon them by the government" *Elmsford, Brief of Letitia James*, at 10. "there is no compelled…state-sponsored occupancy" *Id, Tenants United*, at 10. Ethics rules prohibit cover-ups of controlling adverse precedent to avoid this outcome: "Petitioners' tenants were invited by petitioners, not forced upon them by the government." *Elmsford*, at 163. ("existing relationships between landlords and their tenants." *Id*, at 157). *Elmsford* is wrong to the core and my novel theory is the twice-reaffirmed *holding* of New York's highest court. Federal courts today remain unwitting pawns in a fraud.[9] *Stern*: "the law forces it upon him." This court: "The District's laws do not force Gallo to…" *Gallo v. Dist. of Columbia*, 610 F. Supp. 3d 73, 88 (D.D.C. 2022) & "Had the District forced Gallo to…" *Order Granting Reconsideration*, at 5. This court should not "join" the Southern District of New York in overturning the New York Court of Appeals, nor should courts in other states use *Elmsford* to put people in "relationships" which do not exist as a predicate to *then* hold no taking occurs. *Stern* should be recognized and *Elmsford* rejected for violating it.

To recap *Yee*: Voluntary relationship existed there- it does not here. There is no relationship remaining between a landlord and a *terminated* tenant (Hopkins) or any *breached* lessee who remains squatting not paying. This is universal. See *State v. Bermann*, 48 A.2d 893 (N.J. 1946) (lease is "void for the nonperformance of the covenants"), *Belloc v. Davis*, 38 Cal. 242 (Cal. 1869)( "the term shall cease, and be absolutely determined, by a default in the payment of rent."), *Beall v. Everson*, 34 A.2d 41 (D.C. 1943) ("To constitute the relation of landlord and tenant these elements must be present: Permission or consent on the part of the landlord, subordination to the landlord's title and rights on the part of the tenant, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract either express or implied between the parties."). In a related context, the Supreme Court has recognized: "The relation of landlord and tenant does not subsist between

---

[8] See *Wasservogel v. Meyerowitz*, 89 N.E.2d 712 (N.Y. 1949) ("A statutory tenant holds over not because he has any property right or estate in the premises, but because emergency laws forbid his eviction."), *Whitmarsh v. Farnell*, 298 N.Y. 336 (N.Y. 1949) ("Although…he has continued to pay rent thereunder in advance, he is no longer a tenant…His occupancy of the apartment after his lease expired was not under any agreement express or implied but by virtue of a compulsion…"). *Wasservogel* and *Whitmarsh* were unanimous reaffirmations of *Stern*.
[9] See *Williams v. Alameda Cnty.*, 3:22-cv-01274-LB (N.D. Cal. Nov. 22, 2022) ("not forced upon them by the government"), *Farhoud v. Brown*, 3:20-cv-2226-JR (D. Or. Feb. 3, 2022) ("does not compel"), *Southern California Rental Housing Association v. County of San Diego*, 550 F. Supp. 3d 853 (S.D. Cal. 2021)("they voluntarily open…"), *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1105 (E.D. Wash. 2021) ("petitioners were not compelled…").

7

the parties.…Upon default in payment…the possession becomes tortious" *Burnett v. Caldwell*, 76 U.S. 290 (1869).

Had the government timely compensated, there would be no defaults. Hopkins became a trespasser in May 2020- the other lessees became trespassers upon their defaults- and the District does not refute this. Ergo, the court should consider my novel theories conceded. Had the District compensated for Hopkins at the time, he would have been a tenant at sufferance. I held the deed to the condo while the District *continued to compel his trespass* without compensation. My reversionary interest as the deed holder was appropriated. The simplicity of the claim- properly understood- is why the District refuses to address it two times now.

*The Leased Units*

The District argues that delinquent compensation which *happens to arrive* from a third party means no violation occurred: "presumably he received rent for those units and thus made use of the properties. Thus, there is no physical taking" Motion, at 21. Similarly: "With respect to Plaintiff's (apparently) leased tenants, Plaintiff does not allege the challenged moratoria caused any concrete injury connected to his "direct" or "beneficial" interests in those properties." Motion, at 11. Nonsense: the complaint states the reversionary interests were appropriated for the duration of the breaches, along with income and contracts themselves. All such takings were imminently threatened on all units. The *delinquent* receipt of money which the District refused to make available to the owner "at the time of the taking" does not *negate* the violation. That is the holding of *Knick*.

   b. De Facto/Regulatory Takings

The complaint cites many cases on de facto takings, all of which held that lost rent of 6 months or more constitutes such a taking. None of these cases have been cited by any federal court recently while *precisely this question* resurfaces in them. For this court to hold there is no de facto taking here, it must split with the highest courts of multiple states and some federal circuits.

The District again ignores the facial claim under de facto taking doctrine. "With respect to the non-foreclosed units, the Court's prior analysis full applies." Motion, at 22. What analysis? There was no analysis of the constitutionality of the Filing Ban's imposition- under de facto doctrine- of *unbounded losses* without compensation. The court's analysis focused only on one person in one unit. The facial standard is simple: "The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done." *Stuart v. Palmer*, 74 N.Y. 183 (N.Y. 1878). One Plaintiff's damages on specific units do not determine facial constitutionality.

A few further points here warrant rebuttal. "the SAC does not allege that Plaintiff did not, could not, benefit from relief provided by the District, including StayDC" Motion, at 21. The complaint alleges: the government made no compensation available at the time of the taking. When it was made available, landlords could not apply directly, hence it was still unavailable. One lessee sat for 6 months dithering. When did the lessee *finally* act? When the moratorium ended. Why turn off the TV and "apply" for your landlord to receive funds when the government suspends your payment obligation so you can chill?

Suing a thief for a money judgment for the final amount of an ongoing robbery is not a remedy to the robbery- a fact the District now concedes. ("even if the debt is non-collectible…" Motion, at 22). Even if money suit were a remedy- that is precisely the violation found in *Knick* (rejecting the argument that when you sue the government for money, and later get it, the violation magically never occurred). The District now abandons the "remedy" tack and tries one final dodge: it's not the District's fault that the person who received the property *stolen by statute* (Plaintiff's condo) is not paying back the value, therefore the District is not the "actor" "responsible" for the theft. Nonsense: *DC Code §22–3211. Theft*: "To appropriate the property to his or her own use or to the use of a third person"[10]

Regarding, "expectations" and post-enactment acquisition of formal ownership interest, the District's arguments conflict with controlling state and federal precedent, as extensively briefed already. See Appendix 1. Plaintiff's ownership of his other units predates the Filing Ban, as does his trust ownership of the Foreclosure Unit. The character of the action is felony theft, as held by the Illinois and Arkansas supreme courts.

*Conclusion*

Nowhere in this country do we yet have a *merits* ruling on this issue- merely denials of injunctions. This court should reject- nay, expose- *Elmsford* and reaffirm the holdings of New York's highest court in *Durham Realty (Levy Leasing), Stern, Moerdler, Clark*[11]*, and Higgins*[12]- all of which are superbly reasoned analyses in conflict with everything district courts have put out the last three years. They all confirm the following: there are no "relationships," nor "tenants," nor "voluntary" acquiescence

---

[10] This Court previously emphasized that *Cedar Point* used identical language. "See, e.g. , Cedar Point , 141 S. Ct. at 2071 (stating a physical taking occurs when the government "appropriate[es] private property for itself *or a third party*"). But the notion is not new. If the Legislature jumps out of a van, points a gun at landlords and demands they dispense free lodging, then the Legislature commits a theft no different than muggers on a sidewalk.

[11] *Clark* (cited in the Second Amended Complaint) was authored by the state's chief judge.

[12] *Higgins* (see Plaintiff's Motion for Reconsideration) held that, under *Yee*, it is "the owner's voluntary acquiescence…not the identities of the new tenants or the terms of the leases" which renders a tenancy *permissive* and not forced, distinguishing: "As we noted in Seawall, "[i]t is the forced occupation…which deprives the owners of their possessory interests and results in physical takings." Id, at 172. The same court discussed forced occupation by previously "invited" occupants in *Stern* ("the law forces it upon him.") and *Whitmarsh* ("by virtue of compulsion"). *Supra*.

as someone steals your house while you pay its bills. There are trespassers, compulsion and zero compensation.

One final issue: this court's assumption that unnamed parties writ-large were "unable to pay."[13] Who, precisely, based on what evidence, was *unable* to pay? The District doubles down on this notion: "perhaps Mr. Hopkins simply doesn't have the money to pay." Motion, at 22. Or: perhaps he's a prick who did and took the District up on its two-year invitation to rob this Plaintiff with no qualms whatsoever and then disappear. *Blaisdell* limited temporary and *partial* relief to *truly* innocent people *only* to the extent such relief was "just and equitable" to the creditor after an evidentiary hearing before a trial court. *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934) ("the mortgagor or owner in possession, by applying to a state court before its expiration, may obtain an extension for such time as the court may deem just and equitable"). This court cannot run a *Blaisdell* analysis via assumptions in absentia and declare all lessees citywide of individually deserving equitable relief. The Filing Ban granted all lessees a right to stop all payment for two years. CBS News[14] covered a woman in Chicago whose career is going house to house squatting for free, repeating the theft for decades. Two months ago, ABC ran a similar story in California: "squatters. It's a name for occupants who don't pay rent. And that's who's lived here for the last 9 months. And they know what they're doing."[15] The court should recalibrate its view of humanity to one based in reality.

Respectfully submitted,

*Alexander Gallo*
Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

---

[13] "By assisting tenants who were otherwise unable to pay…" *Order Granting Reconsideration*, at 4.
[14] https://www.youtube.com/watch?v=J75NN6CuGoc
[15] https://www.youtube.com/watch?v=A_FxnLo53mo

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2023, I served a copy of this Opposition on:

Mateya Kelley
Mateya.kelley@dc.gov

*Alexander Gallo*
_____
Alexander Gallo