UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER GALLO,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 1:21-cv-03298-TNM |

## REPLY IN FURTHER SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant the District of Columbia (the District) replies in support of its Motion to Dismiss Plaintiff's Second Amended Complaint (Motion) [54] with five points: (1) Plaintiff lacks standing; (2) the Filing Moratorium did not prohibit the filing of actions for ejectment; (3) the Debt Collection moratorium did not cause Plaintiff any injury; (4) Plaintiff cannot amend his complaint via briefing; and (5) the Second Amended Complaint still fails to state a claim.

### I.  Plaintiff Lacks Standing.

Plaintiff filed his Opposition to the District's Motion on August 28, 2023.  *See* Pl.'s Opp'n to District's Mot. to Dismiss Second Am. Compl. (Opp'n) [55].  On September 1, 2023, Plaintiff served the District via email a notice of supplemental authority, citing a Ninth Circuit case decided on August 30, 2023, *Iten v. Los Angeles*, – F.4th –, 2023 WL 5600292.[1]  *Iten* reversed a district court decision that found a landlord lacked standing to bring his Contracts Clause claim against an eviction moratorium.  *Id*.  The district court held that, because it appeared the landlord *could* in fact have evicted his tenant under the terms of the challenged law, the landlord had failed

---

[1]  The notice has not yet been electronically docketed as of the date this reply was filed.

to plead an Article III injury in fact. *Id*. at *3. The Ninth Circuit reversed, reasoning that (1) it was undisputed that the terms of the moratorium applied to the plaintiff, and that "it was leases" like his "that the Moratorium was designed to reach;" and (2) even if the landlord could have successfully evicted his tenant, "the Moratorium imposed additional rights, remedies, conditions, or procedures that impair the obligations to which he and his Tenant had contracted," including the permanent elimination of certain fees and interest owed. *Id*. at *7. According to the Ninth Circuit, these facts were sufficient to show standing, and questions about whether the landlord could have evicted his tenant were better addressed on the merits, as relevant to the Contracts-Clause question of "whether the state law has operated as a *substantial* impairment of a contractual relationship." *Id*. at *8 (emphasis in original, internal quotation marks omitted). Plaintiff's case is different from *Iten* in many ways.

First, unlike Mr. Iten, Mr. Gallo seeks declaratory relief, which requires that he show some future, personal injury that is certainly impending because of the challenged laws. *See* Mot. at 19; *Iten*, 2023 WL 5600292 (no discussion of request for prospective relief); *Iten v. Cnty of Los Angeles*, Civil Action No. 21-00486, 2022 WL 1127880 (C.D. Cal. Apr. 15, 2022) (same). Standing is assessed as of the time of the filing of the operative complaint. *E.g.*, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *Maniar v. Mayorkas*, Civil Action No. 19-03826, 2023 WL 2709040, at *13 (D.D.C. Mar. 30, 2023). When Plaintiff filed his Second Amended Complaint (SAC) on July 24, 2023, the challenged laws were no longer in effect. *See* SAC, [50]; Order of June 21, 2022, [18] at 4. There is thus no possibility of any future injury to Plaintiff as a result of these laws, and he lacks standing to seek prospective relief. *E.g.*, *Maniar*, 2023 WL 2709040, at *13–14 (holding plaintiffs lack standing to seek declaratory relief from No Fly List policy when they had been removed from the list by the time they filed an amended

complaint).  An allegation of emotional distress (even if Plaintiff had clearly alleged that, which he has not) does not change this or create Article III standing to seek prospective relief.  *See id*. at \*14 (rejecting argument that emotional distress and stigmatization allegedly resulting from having been on the No Fly List did not create concrete, actionable injury).

      Second, unlike the plaintiff in *Iten*, Mr. Gallo does not allege any compensatory damages in connection with his interests in the non-Foreclosed Units.  In his Opposition, he confirms that there are no compensatory damages alleged, but asserts a "damage of mental anguish" and nominal damages, citing *Higgins v. Dail*, 61 A.2d 38 (D.C. 1948), *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), and *Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999).  As stated in the Motion, Plaintiff does not actually plead that he has suffered mental anguish resulting in any damages.  Mot. at 19.[2]  To the contrary, the SAC contains a section titled "V. Compensatory Damages- Mental Anguish" and then alleges that the "anguish is demonstrated by persons similarly situated to whom no compensation was made available," and recounts stories of *other* persons' experiences.  SAC at 18–19.  Thus, even if properly pled damages for mental anguish could produce an Article III injury, the SAC does not plead them.  Further, none of the cases cited in Plaintiff's Opposition show that mental anguish alone creates an Article III injury, or that a request for nominal damages—in the absence of any other injury—does either.  *See also* Mot. at 19–20.

      Third, although Mr. Gallo does allege compensatory damages in connection with the Foreclosed Unit, the challenged laws did not cause or affect Plaintiff's ability to pursue those damages.  It is true that, while the Filing Moratorium was in effect, it foreclosed Plaintiff's ability to file a *summary* eviction proceeding.  *See* Mot. at 20–21.  But even if the Filing Moratorium had

---

[2]    Citations for ECF filings are to ECF pagination.

never existed, Mr. Gallo could not have used that summary proceeding to obtain the "fair use value" damages he alleges that he is owed by the former condo owner. *Id*. at 23 n.2.  Nor could he have filed a debt collection action, since this claimed damage was not a debt. *Id*. at 23.  At any time, instead, Plaintiff could have filed an ordinary action for ejectment, and pursued both an order evicting the former condo owner and damages for the fair use value of the property. *Id*. at 21–23, 23 n.3 (citing *Nicolas v. Howard*, 459 A.2d 1039, 1041 (D.C. 1983) ("The traditional civil action in ejectment … was appellants' alternative to summary proceedings in the Landlord and Tenant Branch.  Had appellants elected to bring suit under that section, they clearly would have been authorized … to add a damages claim for the use and occupation value of the property.  Thus, although appellees may be liable for damages, … those damages are not 'rent,' and the summary proceeding in the Landlord and Tenant Branch is not the proper vehicle for their recovery of such damages.")).  Thus, this alleged injury was not caused, or at all affected by, the challenged laws, and Mr. Gallo has not plead an Article III injury. *Id.* at 23, 23 n.2.

## II.     The Filing Moratorium Did Not Prohibit the Filing of Actions for Ejectment.

In his Opposition, Plaintiff correctly points out that Judge Epstein of the Superior Court of the District of Columbia (the Superior Court) held in December of 2020 in the *Gallo Holdings* matter that the temporary prohibition on filing actions under D.C. Code § 16-1501 (the Filing Moratorium) also precluded the filing of ejectment actions under a different section, D.C. Code § 16-1101.  *See* Opp'n at 2–3; *see also* Ex. E, *Gallo Holdings LLC – Series 2 v. Andre Hopkins*, Case No. 2020 LTB 008032, Order of December 16, 2020, at 26–30.[3]   In any event, Judge

---

[3]     It is true that counsel for the District included an error on this point in Footnote one of its prior motion to dismiss, [42], but that error was not repeated in the pending motion, [54].

Epstein's ruling does not change the analysis put forth in the District's Motion that the Filing Moratorium did not prohibit the filing of actions for ejectment.[4]

To start, local trial court opinions do not bind this Court's interpretation of District law. *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 161–62 (1948) (explaining that "a federal court adjudicating a matter of state law" is "in effect, only another court of the State" and it "would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court") (cleaned up).  Thus, Judge Epstein's opinion matters only to the extent this Court finds its reasoning persuasive.

But Judge Epstein's ruling should hold little persuasive weight because it dismisses the plain text of the statute on the basis of a broader misunderstanding of its effects.  As quoted in full in the Motion, the language of D.C. Code 16-1501(b) is plain and unambiguous: "During … a public health emergency … the person aggrieved shall not file a complaint seeking relief *pursuant to this section*."  Mot. at 14 (emphasis added).  The *Gallo Holdings* Order of December 16 acknowledges this but finds that *any* complaint "for the restitution of possession" is somehow "in fact and substance seeking relief 'pursuant to' § 16-1501."  Ex. E at 26–27.  That finding cannot be squared with the plain language of § 16-1501, or the existence of other causes of action for similar relief.  *Cf. id*. at 27 ("'[O]ne of the most basic interpretive canons' … is 'that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting *Stevens v. D.C. Dep't of Health*, 150 A.3d 307,

---

[4] This point may be relevant to the Court's consideration of Plaintiff's standing, as discussed above and in the Motion.  It is also relevant to the Court's consideration of Plaintiff's Contracts Clause claim on the merits.  *Cf. Iten*, 2023 WL 5600292, at *8 (finding consideration of whether plaintiff could have evicted his tenant relevant to question of whether any contractual interests were substantially impacted).  And, if it is true that Plaintiff could have pursued an action to evict his tenant at any time, then it is also hard to see, on the merits, how the challenged laws effected any physical or regulatory taking.  *See* Mot. at 26–30 (outlining basic elements).

315–16 (D.C. 2016)); *Am. Stud. Ass'n v. Bronner*, 259 A.3d 728, 745 (D.C. 2021) ("first step" is plain meaning).

Judge Epstein reasoned that if the Filing Moratorium was *not* interpreted to prohibit ejectment actions, then the Filing Moratorium would be effectively meaningless, because all landlords could immediately file ejectment actions for all tenants. *Id*. at 26, 29 ("[I]nterpreting the filing moratorium in § 16-1501(b) not to apply to ejectment actions would effectively nullify the filing moratorium . . . ."). But Judge Epstein did not consider the arguments put forth in the District's present Motion, *i.e.*, that other parts of District law—namely, the Rental Housing Act (RHA)—prevented the avalanche of evictions Judge Epstein predicted. *See* Mot. at 21–22; Ex. E at 26–30. During the public health emergency, the RHA prohibited the eviction of (most) tenants protected by that Act (the Eviction Moratorium), as well as the service of any notice to vacate on such tenants (the Notice Moratorium). Mot. at 21–22. Because service of a notice to quit or vacate is a precondition to the filing of any action for possession against *any* tenant, *Hernandez v. Banks*, 84 A.3d 543, 554 (D.C. 2014), the Notice Moratorium, which applied *only* to tenants protected by the RHA, *see* D.C. Code § 42-3505.01(q), effectively prevented the filing of suits against *protected* tenants (and only protected tenants), *see Molla v Sanders*, 981 A.2d 1197, 1201 (D.C. 2009) (explaining that "appellant could not evict appellee [rental-tenant] through an action for ejectment, but must follow the eviction procedure set forth in the Rental Housing Act, D.C Code § 42-3501.01"). Read in conjunction with other contemporaneous bans in the D.C. Code, then, the Filing Moratorium is properly understood to have prevented the filing of all *summary* actions for eviction of protected tenants, but *not* ordinary ejectment actions to evict persons unprotected by the RHA. Mot. at 20–22 (citing, *e.g.*, *Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212 (D.C. 1978) (holding holdover homeowners not protected by RHA)).

6

Indeed, Judge Epstein himself confirmed this understanding about a month after his *Gallo Holdings* Order. In *Saltzman v. Kogan*, Judge Epstein granted an emergency order requiring a defendant to move out of the plaintiffs' property because the defendant was not a "tenant" within the meaning of the RHA, nor protected by its provisions, including the temporary Eviction Moratorium. *See* Ex. F, Case No. 2020 CA 004978, Order of Jan. 22, 2021 at 1–3. The plaintiffs' complaint in *Saltzman* was filed before Judge Epstein's *Gallo Holdings* Order of December 16, 2020 (thus the Filing Moratorium was in effect) and pursuant to D.C. Code § 16-1101, *et seq*. *See* Ex. G at 1.[5] The plain language of District law shows that Plaintiff here could have done the same thing, then, or, more importantly, at any time; therefore, as argued in the Motion, Plaintiff did not suffer any harm as a result of the challenged laws.

### III.   The Debt Collection Moratorium Did Not Cause Plaintiff Any Injury.

In his Opposition, Plaintiff also appears to incorporate by reference another argument from an opposition to a prior motion to dismiss. *See* Opp'n, [55] at 3 ("In my prior Opposition … I … noted the Small Claims Branch stayed the money action until after the moratorium.") Plaintiff thus appears to argue that an order by another Superior Court judge contradicts the District's textual argument that the Debt Collection Moratorium did not harm Plaintiff. *See* Pl.'s Opp'n to District's Mot. to Dismiss the Am. Compl., [44] at 3. He states: "When I sued Hopkins for money judgment and put 'not an attempt to collect a debt' on the claim . . . , the trial judge

---

[5]   The complete *Saltman* Complaint is 81 pages and available to the public through the Superior Court's website. The first, cited, page of the pleading is attached as an exhibit for the Court's convenience.

7

ruled that my claim was barred by the moratorium and would thus be stayed until it ended." *Id*. Plaintiff is incorrect, both about the text of the order and the alleged contradiction.[6]

According to the (publicly available) docket for Mr. Gallo's small-claims case, Mr. Gallo filed suit on June 11, 2021. *See* Mot., Ex. C (Complaint, *Gallo v. Hopkins*, Case No. 2021 SC3 000523 (D.C. Sup. Ct.)). An initial hearing was set for September 1, 2021. Ex. H, Order of Sept. 3, 2021 at 2. The hearing occurred, but Mr. Hopkins did not appear. *Id*. In an order resetting the hearing for September 28, 2021, the presiding judge explained "[b]ecause this case *may* be subject to the current moratorium on debt collection cases, the Court continued the matter and scheduled a Continued Initial Hearing." *Id*. (emphasis added). The Debt Collection Moratorium ended soon thereafter, on September 23, 2021, and before the next hearing date. *See* Superior Court of the District of Columbia, Second General Order Regarding Debt Collection Cases (Nov. 1, 2021), *available at* https://tinyurl.com/26zcezbf (stating end date). On September 28, 2021, Mr. Hopkins again did not appear; without addressing any effect of Mr. Gallo's having filed suit during the moratorium, "the Court entered a default against Defendant for failing to appear," and set an Ex Parte Proof Hearing for November 15, 2021. Ex. I, Order of October 1, 2021 at 2. The court then entered judgment for Mr. Gallo in the amount of $10,000 on November 16, 2021. Ex. D.

There is no indication on the *Gallo v. Hopkins* docket that any Superior Court judge found that Mr. Gallo's claim was "barred" by the Debt Collection Moratorium, nor anything in the case history or record that in fact conflicts with the argument put forth in the District's Motion.

---

[6] Further, Plaintiff's own claim in Superior Court that his complaint for the fair use value of the Foreclosed Unit was "not an attempt to collect a debt" appears to be an admission that the District's argument that Plaintiff's claim for fair use value was not a debt is correct. *See* Mot. at 23.

## IV.     Plaintiff Cannot Amend His Complaint Through Briefing.

Plaintiff's Opposition also raises, for the first time, a series of assertions concerning "behavioral breaches" by "one of Plaintiff's lessees." Opp'n [55] at 4. Plaintiff places this under a heading titled "Contracts Clause." *Id*. at 3–4. Whatever the intended import of these assertions, Plaintiff cannot amend his complaint through briefing. *E.g.*, Order of March 1, 2023, [43] at 9 ("The Court remains skeptical that Gallo's case can succeed. To stand a chance, he should include *all relevant* facts in his Amended Complaint."); *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 81 n.5 (D.D.C. 2021) (collecting cases). Accordingly, the District need not and will not respond to these new factual assertions.

## V.     Plaintiff's Amended Complaint Still Fails To State A Claim.

Like his complaints, Plaintiff's Opposition is difficult to parse; it is filled with non sequiturs, legal misunderstandings, and disagreements with this Court's prior orders and reasoning. *E.g.*, *compare* Opp'n, [55] at 4 ("When obligations are 'suspended' without the government compensating the violation is complete. Instalment laws which kick all payments far into the future are facial violations.") *with* Order of June 21, 2022, [18] at 12 (explaining that the Filing Moratorium does not violate the Contracts Clause because, among other things, "Gallo's remedies for contractual breaches are not eliminated but merely delayed because of a national emergency"); *compare* Order of March 1, 2023, [34] at 6 (rejecting "novel" argument concerning Takings Clause) *with* Opp'n at 6–7 (urging Plaintiff's "novel theory is not as novel as it seems" and that "[f]ederal courts today remain unwitting pawns in a fraud").

The District does not believe that any of the arguments asserted, or the authorities cited, conflict or call into question the arguments put forth in its Motion to Dismiss the Second Amended Complaint. With respect to any units referenced in the Second Amended Complaint

9

*other* than the Foreclosed Unit, the District believes that the Court's rational for dismissing Plaintiff's initial complaint, *see* Order of June 21, 2022, fully applies and is sufficient to dismiss any renewed claims concerning those units. With respect to the Foreclosed Unit, as discussed in the Motion, Plaintiff's claims should be dismissed because the challenged laws cannot possibly injure Plaintiff in the future, and they did not cause the alleged damages—Plaintiff could have filed an ordinary ejectment action to evict the holding-over homeowner and obtain the alleged damages at any time. Mot. at 19–23. Alternatively, and among other reasons, there is no Contracts Clause violation because there was never a contract associated with that property. *Id.* at 24–25. And there is no physical taking because the holding-over homeowner entered the property lawfully, as its owner; and, in any event, Plaintiff could and *did* pursue compensation for the allegedly lost fair use value of the property. *Id*. at 26–29. For similar reasons, there is no regulatory taking because Plaintiff does not allege striking economic effects—to the contrary, he alleges he could and did obtain an order of compensation for the allegedly lost fair use value of the property. *Id*. at 29–30. If the foreclosed homeowner cannot pay it, that is not the District's fault. *Id*. Additionally, when Plaintiff obtained his ownership stake in the Foreclosed Unit, Plaintiff *knew* that the foreclosed owner was occupying the property, and that the challenged laws were in effect—Plaintiff does not appear to dispute this in his Opposition. *See* Opp'n at 2 (arguing that Plaintiff personally went to the auction house and "put down the purchase money at the podium," but not that he bought the Foreclosed Unit in 2020). Thus, if it is true as Plaintiff argues that the challenged laws somehow applied to this situation (which they did not), then Plaintiff could not have reasonably expected to be able to evict the former owner or file a debt collection suit (for a nonexistent debt) until the end of the public health emergency. Mot. at 30–31. There is thus no regulatory taking either. *Id*.

If the Court finds that Plaintiff's Opposition makes any arguments that are not addressed by its own prior Orders, or the District's Motion, or this reply, the District respectfully requests to the opportunity to respond at oral argument, so that the Court and the Parties can most efficiently resolve any remaining questions or concerns.

## CONCLUSION

For all of these reasons, the Second Amended Complaint should be dismissed.

Date: September 5, 2023.                        Respectfully submitted,

                                                BRIAN L. SCHWALB
                                                Attorney General for the District of Columbia

                                                STEPHANIE E. LITOS
                                                Deputy Attorney General
                                                Civil Litigation Division

                                                */s/ Matthew R. Blecher*
                                                MATTHEW R. BLECHER [1012957]
                                                Chief, Civil Litigation Division, Equity Section

                                                */s/ Honey Morton*
                                                HONEY MORTON [1019878]
                                                Assistant Chief, Equity Section

                                                */s/ Mateya B. Kelley*
                                                MATEYA B. KELLEY [888219451]
                                                Assistant Attorney General
                                                Civil Litigation Division
                                                400 6th Street, NW
                                                Washington, D.C. 20001
                                                Phone: (202) 724-5824
                                                mateya.kelley@dc.gov

                                                *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I certify that, on September 5, 2023, a copy of Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint was served by electronic mail, with Plaintiff's consent, on:

    Alexander Gallo
    aogallo@gwmail.gwu.edu

    *Plaintiff Pro Se*

                                               */s/ Mateya B. Kelley*
                                               MATEYA B. KELLEY [888219451]
                                               Assistant Attorney General