UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexander Gallo
*Plaintiff*
v.

District of Columbia
*Defendant*

Case 1:21-cv-03298-TNM
Judge Trevor N. McFadden

### Notice of Supplemental Authorities

Plaintiff (requesting leave if necessary) notices an intervening opinion of the Washington Supreme Court, plus an authority substantiating Fact #9.

1. *Gonzales v. Inslee*, No. 100992-5 (Wash. Sep. 28, 2023)

In a suit only for declaratory judgment, the Washington Supreme Court found no "physical" taking- on the caveat that some payment was purportedly required[1] or unspecified relief was purportedly available (no disputed facts "only questions of law.") *Id*, at 8. Facts below: "appellants also briefly argue that the eviction moratorium took the rental income to which they were entitled. But it is undisputed that the moratorium did not eliminate the appellants' ability to collect the full amount of past rent due" *Gonzales v. Inslee*, 504 P.3d 890 (Wash. Ct. App.) (f.12).[2] This morphed into: "We are not without sympathy to the fact that the petitioners have been made to bear the cost of accommodating a public need. We note that both Congress and the Washington State Legislature have appropriated significant funds to…" *Gonzales (footnote 9)*.

But the facts as reported in local media look quite[3] different[4] than the facts tossed by the state. The federal appropriation referenced in *Gonzales* is the same as StayDC. If relief were in fact timely available in Washington state, why would three thousand providers pull units off the market?[5] Rhetorical question- see answer.[6]

---

[1] The Washington moratorium (unlike the District's here) purportedly required a lessee to pay an amount "reasonable based on the individual" tenant's circumstances. 504 P.3d 890, 898. This distinction is meaningful.
[2] The plaintiffs there did not claim a taking of the rent, or "reasonable" income, or contracts, or regulatory taking. Plaintiffs there did not attempt to enforce a "reasonable" payment plan; here in DC, all enforcement was disallowed.
[3] Seattle, July 8, 2021: "He hasn't paid rent in 18 months" & regarding supposed relief programs: "we have no recourse there. None whatsoever." (https://www.youtube.com/watch?v=3_puf4i7OCE)
[4] Seattle, September 21, 2021: "we're literally with handcuffs begging for the rent to be paid" (https://www.youtube.com/watch?v=iyhahM8wAmE)
[5] Seattle, April 28, 2022 (https://www.youtube.com/watch?v=Zyy78eTH5sE)
[6] Seattle, September 2021: https://www.youtube.com/watch?v=R213Kfv1efg ("you bring someone into your house, and this person can become a squatter tomorrow")

1

RECEIVED
NOV 8 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

*Gonzales*, in assuming[7] compensation[8] was[9] available,[10] dwells in a parallel universe. It contains a second statement conflicting with other state high courts and the Supreme Court on eviction moratoria: "The tenants are on the landlords' property with the landlords' permission…" *Id*, at 16.[11] *Gonzales* also conflicts with DC Circuit precedent holding occupancy is not permissive post-default by a lessee, treating the question as one of contractual fact.[12]

2. State Law on Termination of Relationship

Plaintiff, in preparing a notice recently, came across *Craig v. Heil*, 47 A.2d 871 (D.C. 1946) (holding a Notice to Quit is "given privately from one party to another, terminating (or attempting to terminate) the landlord-tenant relationship."). While an improperly worded or served notice would constitute only a non-enforceable attempt at terminating the relationship, the Notice served on Hopkins in 2020 was affirmed by the Superior Court as the basis for possession.[13] To the extent Paragraph 9 of the SAC would benefit from authority, *Craig* provides it. The possession judgment by Superior Court should make the fact of the termination as of May 5, 2020 res judicata.

Respectfully submitted,

*Alexander Gallo*
Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

---

[7] Seattle, September 18, 2020: "forced to act as a welfare agency" with no reimbursement. (https://www.youtube.com/watch?v=f-z924fnXK4)
[8] Seattle, August 15, 2020: "Friday's release did not note any resources available for landlords" (https://www.youtube.com/watch?v=3omJuQyb-EA)
[9] Seattle, February 8, 2022: "owed tens of thousands of dollars…using all our retirement money" (https://www.youtube.com/watch?v=rzLRr9ort5c)
[10] Seattle, March 3, 2021: "haven't paid a dime in almost a year…absolutely nothing he can do about it…so out of hand it's impacting his health…out $30,000" (https://www.youtube.com/watch?v=Ij4m1h6n_gE)
[11] "Were on" ≠ "are on" - so said the highest courts of New York in *Stern* ("against the will of the landlord") and Illinois in *O'Brien v. Brown*, 85 N.E.2d 685, 403 Ill. 183, 190 (Ill. 1949) ("against the will of the landlord… expressly intended to 'freeze' the occupancy of premises covered"). See also *Yakus v. United States*, 321 U.S. 414, 443 (1944) ("against the will of the landlord.")
[12] Standard leases contain automatic revocation of permission to reside upon payment default- a clause known as waiver of notice to quit. Such waivers were affirmed in *Waggaman v. Bartlett*, 2 Mackey (13 D.C.) 450 (1883) ("Every day beyond that time that he occupies it is an encroachment upon the property of another person, that is, his landlord.") (Restated in *H.L. Rust Co. v. Drury*, 68 F.2d 167 (D.C. Cir. 1933)).
[13] *Alexander Gallo v. Andre Hopkins*, 2022-LTB-000672.

## Certificate of Service

I certify that on November 8, 2023, a copy of this Notice is served by electronic mail on:

Mateya.kelley@dc.gov

*Alexander Gallo*

Alexander Gallo